HANDWORK, P.J., GLASSER and MELVIN L. RESNICK, JJ., concur.

---

SORINA, Appellant,

v.

ARMSTRONG; Kaji, Appellee.

[Cite as *Sorina v. Armstrong* (1990), 68 Ohio App.3d 800.]

Court of Appeals of Ohio,
Lucas County.

No. L-89-377.

Decided Oct. 19, 1990.

*Robert M. Scott,* for appellant.

*James F. Nooney,* for appellee Yasuhiko Kaji, M.D.

*Per Curiam.*

This case is an appeal from a judgment of the Lucas County Court of Common Pleas.

The facts of this case are as follows. On June 18, 1984, appellee, Yasuhiko Kaji, M.D., examined appellant, Tracy L. Sorina, and determined that she was fifteen to sixteen weeks pregnant. Sorina requested an abortion. However, Kaji informed Sorina he did not perform mid-trimester abortions and gave her a list of several out-of-town physicians and clinics who did perform such a procedure. Sorina did not contact any of the physicians and clinics recommended by Kaji and, instead, obtained an abortion performed by Carl L. Armstrong, M.D., at Toledo Medical Services ("TMS") on June 19, 1984. Although TMS recommended to Sorina that she schedule her post-abortion follow-up appointment with TMS, Sorina told TMS she preferred to return to Kaji.

On June 28, 1984, Sorina was examined by Kaji complaining of having pain and feeling sick. Kaji noted in his medical records that Sorina was undergoing a normal process of recovery from the abortion and diagnosed her condition as possible endometritis (an infection of the uterus). Kaji prescribed an antibiotic and pain pills for Sorina. Kaji testified that he told Sorina she might be suffering from complications from the abortion and she must return to TMS for her post-abortion follow-up visit. Sorina testified that she did not remember whether Kaji told her to make such an appointment with TMS; however, Sorina never did return to TMS.

On August 3, 1984, Sorina scheduled another appointment with Kaji which she did not keep due to lack of transportation. On August 6, 1984, Sorina was examined by Kaji complaining of pain and discharge. Kaji diagnosed her condition as endometritis and prescribed antibiotics.

On August 20, 1984, Sorina scheduled an appointment with Kaji which she also did not keep due to lack of transportation.

On September 17, 1984, Sorina was examined by Kaji complaining of pain, discharge and bleeding between her regular menstrual periods. Kaji diagnosed her condition as a hemophilus vaginalis infection and prescribed antibiotics.

Sorina testified that because her condition did not improve subsequent to her September 17, 1984 appointment with Kaji, she sought treatment from another physician. On November 2, 1984, a dilation and curettage ("D & C") was performed revealing residual products of conception from the June 19, 1984 abortion. Sorina's condition did not improve and a second D & C was

performed on March 27, 1985. Sorina's condition still did not improve and a hysterectomy was performed on September 5, 1985.

On October 8, 1985, Sorina filed a malpractice action against Kaji, Armstrong and TMS. On August 21, 1986, Armstrong and TMS were dismissed without prejudice by consent of the parties. On February 9, 1987, Sorina filed an amended complaint against Kaji and TMS.

On November 3, 1987, summary judgment was granted in favor of TMS, which was subsequently appealed to this court. On July 15, 1988, we affirmed the trial court's grant of summary judgment in favor of TMS. *Sorina v. Armstrong* (1988), 51 Ohio App.3d 113, 554 N.E.2d 943.

On November 27, 1989, the trial court granted summary judgment in favor of Kaji. It is from this judgment that Sorina raises the following two assignments of error:

"I. The trial court erred in granting summary judgment to the defendant as genuine issues of material fact were present with regard to Dr. Kaji's negligence in treating the plaintiff.

"II. The trial court erred in its application of the law of the case doctrine as this doctrine is only applicable when the trial court is confronted with the same facts and issues as were involved in a prior appeal."

■ Sorina's second assignment of error will be addressed first. As her second assignment of error, Sorina argues that the trial court erred in its application of the doctrine of law of the case. Specifically, Sorina argues that the trial court, in determining whether to grant summary judgment as to Kaji, was not bound by this court's previous affirmation of the summary judgment granted in favor of TMS.

■ The doctrine of the law of the case " 'provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels.' " *Hawley v. Ritley* (1988), 35 Ohio St.3d 157, 160, 519 N.E.2d 390, 393 (quoting *Nolan v. Nolan* [1984], 11 Ohio St.3d 1, 3, 11 OBR 1, 2, 462 N.E.2d 410, 412). The doctrine applies where on remand from a reviewing court, " 'a trial court is confronted with substantially the same facts and issues as were involved in the prior appeal * * *.' " *Hawley, supra* (quoting *Nolan, supra* ).

In the present case, the first appeal involved a review of the trial court's grant of summary judgment in favor of TMS. This court found that although TMS may have been negligent in failing to sufficiently inform Sorina of her need for a post-abortion follow-up visit, Sorina failed to produce any evidence

that TMS's negligence was the proximate cause of her injury. We stated as follows:

"Appellant should have presented some evidence to support her contention that [TMS's] alleged breach of duty was the actual and proximate cause of appellant's injury. Appellant's expert witness testified that the actual cause of injury was the failure of early detection of the retained products. However, with respect to proximate cause, appellant must be able to prove that the intervening causes, *i.e.*, her physician's failure to discover the cause of her symptoms and appellant's unwillingness to seek diagnostic treatment, were reasonably foreseeable to [TMS]. It is not necessary to address the foreseeability of appellant's physician's failing to diagnose the condition, because we find that it was not reasonably foreseeable that appellant would refuse to follow her own physician's advice. Appellant's physician testified that he told appellant that he could not determine the cause of her symptoms and that she should return to [TMS] who would be in a better position to diagnose the problem since its doctor performed the abortion. At that point, appellant had sufficient information to know that further follow-up by [TMS] was necessary. Reasonable minds could come to but one conclusion, that is, that appellant's own disregard for her health proximately caused her injury." *Sorina v. Armstrong* (1988), 51 Ohio App.3d 115, 116, 554 N.E.2d 943, 945.

The sole issue in the first appeal was whether TMS failed to sufficiently inform Sorina of the need for a post-abortion follow-up visit. Sorina never returned to TMS following the abortion. In contrast, the present appeal involves the issue of whether Kaji, the physician who did treat Sorina on three separate occasions following the abortion, was negligent. This court finds, given these differences in fact, that the doctrine of the law of the case is inapplicable regarding the alleged negligent acts of Kaji. Therefore, Sorina's second assignment of error is found well taken.

■ As her first assignment of error, Sorina argues that summary judgment was inappropriate and that there remained genuine issues of material fact as to Kaji's alleged acts of negligence.

Civ.R. 56(C) provides that summary judgment is appropriate only if it appears "that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made * * *." Further, in *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47, the Supreme Court of Ohio stated that the requirements for granting a motion for summary judgment are as follows:

"The appositeness of rendering a summary judgment hinges upon the tripartite demonstration: (1) that there is no genuine issue as to any material

fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor."

Further, this court has stated in *Viock v. Stowe–Woodward Co.* (1983), 13 Ohio App.3d 7, 14–15, 13 OBR 8, 15–16, 467 N.E.2d 1378, 1386–1387, as follows:

"We recognize that summary judgment, pursuant to Civ.R. 56, is a salutary procedure in the administration of justice. It is also, however, a procedure which should be used cautiously and with the utmost care so that a litigant's right to a trial, wherein the evidentiary portion of the litigant's case is presented and developed, is not usurped in the presence of conflicting facts and inferences. *Nolan [v. Johns–Manville Asbestos & Magnesia Materials Co.* (1979), 74 Ill.App.3d 778, at 793–794, 30 Ill.Dec. 307, at 318, 392 N.E.2d 1352], at 1363; see *Norris, [v. Ohio Std. Oil Co.* (1982), 70 Ohio St.2d 1, 24 O.O.3d 1, 433 N.E.2d. 615]. It is settled law that '[t]he inferences to be drawn from the underlying facts contained in the affidavits and other exhibits must be viewed in the light most favorable to the party opposing the motion, * * *' which party in the instant case is appellant."

In the present case, Barry S. Titton, M.D., testified that the need for a hysterectomy was caused by an acute and chronic infection resulting from retained products of conception left after Sorina's abortion. Titton further testified that if a timely diagnosis and treatment of Sorina's condition had been made the hysterectomy would have been unnecessary.

Both Titton and Kaji testified that Sorina's symptoms were compatible with the diagnosis of retained products of conception. Titton further testified that given Sorina's symptoms and the failure of the initial antibiotic treatment, the accepted standards of medical care require that either an ultrasound or a D & C be performed. Neither procedure was performed by Kaji during the three-month period following the abortion during which Sorina was Kaji's patient.

At her appointment with Kaji on June 28, 1984, Kaji testified, he diagnosed Sorina's condition as possible endometritis, told Sorina to return to TMS for a post-abortion follow-up visit and informed her that she might be suffering from complications from the abortion. Although Kaji noted, in Sorina's medical records, that he referred Sorina to TMS for a post-abortion follow-up, such records also include Kaji's impression that Sorina was undergoing the normal process of recovery following the abortion.

At Sorina's subsequent appointments with Kaji, on August 6 and September 18, 1984, Kaji testified, he diagnosed and treated Sorina for uterine and

vaginal infections, but he does not remember whether he advised Sorina to seek treatment for possible complications following the abortion. The medical records kept on Sorina by Kaji for both of these appointments do not indicate either a diagnosis of possible complications as the result of the abortion or a referral to either TMS or another physician for further investigation as to possible complications of the abortion.

In construing the above evidence in a light most favorable to the nonmoving party, we find reasonable minds could disagree as to whether Kaji was negligent in committing malpractice in regard to Sorina. Accordingly, Sorina's first assignment of error is found well taken.

On consideration whereof, this court finds that substantial justice has not been done the party complaining and the judgment of the Lucas County Court of Common Pleas is reversed. It is ordered that appellee pay the court costs of this appeal.

*Judgment reversed*
*and cause remanded.*

HANDWORK, P.J., GLASSER and MELVIN L. RESNICK, JJ., concur.