**VIOX, Admr., Appellee,**

v.

**WEINBERG et al., Appellants.**

[Cite as *Viox v. Weinberg,* 169 Ohio App.3d 79, 2006-Ohio-5075.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–050756.

Decided Sept. 29, 2006.

Weisser & Wolf and Mark B. Weisser, for appellee.

Rendigs, Fry, Kiely & Dennis, L.L.P., and Felix J. Gora; and Lindhorst & Dreidame and Michael F. Lyon, for appellants Susan Weinberg, M.D., and Northeast Radiology, Inc.

GORMAN, Presiding Judge.

{¶ 1} Defendants-appellants Susan Weinberg, M.D., and her employer Northeast Radiology Inc. (collectively "Dr. Weinberg"), appeal the judgment of the trial court entered on a jury's verdict in favor of plaintiff-appellee, John Viox II, the administrator of the estate of Jeanne Zach, in a wrongful-death action. Dr. Weinberg also appeals from the trial court's denial of her motions for a new trial and to amend the pleadings and from the trial court's award of prejudgment interest to Zach. Dr. Weinberg, a board-certified radiologist, reviewed two x-rays of Jeanne Zach's chest and failed to detect a tumor present in her left lung. The jury returned a verdict in favor of Zach in the amount of $1,988,870. The trial court awarded prejudgment interest in the amount of $606,723.68.

{¶ 2} In her six assignments of error, Dr. Weinberg now argues that (1) the trial court erred in denying her request for an instruction on contributory patient negligence and erred in denying her motion to amend the pleadings to conform to the evidence; (2) the jury's verdict was influenced by the improper remarks of Zach's trial counsel; (3) the trial court erred in denying her motion for a new trial based on newly discovered evidence; and (4) in two instances, the trial court abused its discretion in responding to a jury request to have testimony read during its deliberations and in awarding prejudgment interest. Because Dr. Weinberg had withdrawn her affirmative defense of contributory patient negligence and the parties did not impliedly consent to a trial on that issue, because Zach's trial counsel's comments did not call the fairness of the trial into question, and because the trial court did not abuse its discretion, we affirm.

## Facts

{¶ 3} On Sunday, September 23, 2001, Jeanne Zach was taken to defendant Bethesda North Hospital by ambulance. She complained of pain on the left side of her chest and found it painful to breathe. Defendant Edmund A. Hooker, M.D., examined Zach in the emergency room and ordered laboratory tests and a chest x-ray. The radiology service took posterior/anterior and lateral x-rays of her chest. Dr. Hooker diagnosed acute lower left-lobe pneumonia and released Zach with prescriptions for an antibiotic and cough and pain medications.

{¶ 4} Dr. Weinberg's medical practice provided diagnostic radiology services to Bethesda North Hospital. Dr. Weinberg had no direct contact with Zach, but read the chest x-ray films the next day. She concluded that the x-rays were normal in all respects, specifically noting that Zach's lungs appeared free of any abnormal masses.

{¶ 5} Over the next year, Jeanne Zach was treated four times by defendant Paul Chandler, M.D., an internist. On September 27, 2001, Dr. Chandler concluded that Zach was suffering from asthma and bronchopneumonia. He said that he relied upon Dr. Weinberg's findings in making this diagnosis. He saw Zach three more times, in March 2002, June 2002, and October 2002. In his deposition testimony, he described her as a difficult and "noncompliant" patient who used alcohol and tobacco and who elected not to submit to many of the tests that he ordered. During Zach's third visit in June 2002, she again had respiratory symptoms. Dr. Chandler recalled that she declined his recommendation to submit to another chest x-ray, although she did undergo a pulmonary-function test and blood work.

{¶ 6} Because Dr. Chandler had been removed as a covered health-care provider in Zach's insurance plan, she saw internist Bruce Greenberg, M.D., on October 16, 2002. He prescribed a chest x-ray that indicated abnormalities in the left lung. A CT scan then revealed a terminal non-small-cell lung cancer in Zach's left lung. Despite chemotherapy and radiation treatments, Jeanne Zach died on May 1, 2003. Her husband died shortly after her, leaving her 25–year–old daughter, Stephanie, as her sole survivor.

{¶ 7} Zach and her husband originally sued defendants Dr. Hooker, Dr. Chandler, and Bethesda North Hospital, in addition to Dr. Weinberg. During discovery, Zach voluntarily dismissed Drs. Hooker and Chandler, and Bethesda North Hospital. Shortly after Zach's death, her estate was substituted as the plaintiff, and the case proceeded against Dr. Weinberg as a wrongful-death action alleging medical negligence.

{¶ 8} At trial, Zach offered the expert testimony of Dr. Daniel Beineke, a radiologist who testified that a reasonably prudent radiologist viewing the

September x-rays would have detected a two-and-one-half- to three-centimeter cancerous tumor in Zach's chest. Dr. Mark Campbell, a board-certified oncologist, testified for Zach and stated that the tumor revealed on the x-rays was a Stage I cancer and that with appropriate medical care, Jeanne Zach would have had a 65–70 percent chance of survival if the tumor had been diagnosed in September 2001.

{¶ 9} Barry Bates, M.D., Dr. Weinberg's diagnostic-radiology expert, testified that when he viewed the x-rays, he saw a "little density" that could have been an abnormality, but after further review, he believed it to be a natural chest structure. He testified that Dr. Weinberg did not deviate from the standard of care required of a radiologist. Dr. Weinberg also testified and stated that she did not deviate from the standard of care in reading the September 2001 chest films.

{¶ 10} William Cody, M.D., a board-certified oncologist, also testified for Dr. Weinberg. He stated that even if Zach's cancer had been discovered in September 2001 when Dr. Weinberg viewed the films, Zach's condition was terminal, and she did not have a better than 50 percent chance of survival.

{¶ 11} Trial commenced on March 28, 2005. After seven days of testimony and argument, the jury returned a verdict for Zach on April 5. The jury answered interrogatories and awarded damages. The trial court awarded prejudgment interest and ruled on the other posttrial motions, and this appeal ensued.

## Contributory Patient Negligence

{¶ 12} In two interrelated assignments of error, Dr. Weinberg argues that Zach was negligent in failing to heed the advice of Dr. Chandler to undergo another chest x-ray in the year following Dr. Weinberg's reading of the Bethesda North Hospital chest films. She maintained that Zach's failure to follow Dr. Chandler's advice was the proximate cause of Zach's death or suffering that limited or extinguished any alleged negligence in Dr. Weinberg's failure to properly diagnose lung cancer in September 2001. Dr. Weinberg assigns as error the trial court's failure to submit an instruction on contributory negligence to the jury and its denial of her motion to amend the pleadings to include the affirmative defense of contributory negligence.

{¶ 13} "Ohio law recognizes the defense of contributory negligence in medical malpractice cases." *Lambert v. Shearer* (1992), 84 Ohio App.3d 266, 284, 616 N.E.2d 965, citing *Bird v. Pritchard* (1973), 33 Ohio App.2d 31, 62 O.O.2d 96, 291 N.E.2d 769; see, also, 3 Ohio Jury Instructions (2004), Section 331.11. Disregarding a doctor's orders can be patient negligence. See, e.g., *Sorina v. Armstrong* (1990), 68 Ohio App.3d 800, 589 N.E.2d 1359. But there must be some evidence or proof of a causal connection between the alleged contributory

patient negligence and the injury caused by the tortfeasor. See *Lambert v. Shearer*, 84 Ohio App.3d at 285, 616 N.E.2d 965. The contributory negligence of the patient must have been an active and efficient contributing cause of the injury that is the basis of the patient's claim.

{¶ 14} Here, the alleged malpractice was Dr. Weinberg's failure to correctly identify a cancerous lesion in the September 2001 chest film. Although a patient's contributory "negligence can serve to diminish recovery under modern comparative negligence principles, it is patently clear that such negligence must be contemporaneous with the malpractice of the physician." *Lambert v. Shearer*, 84 Ohio App.3d at 284, 616 N.E.2d 965.

{¶ 15} Moreover, when contributory patient negligence becomes an issue in a medical-malpractice case, there is often a need for the defendant physician to offer expert testimony on the issue. Usually, expert medical testimony is required to identify the proximate effect that a patient's negligence may have had on her medical condition. See id. at 284–285, 616 N.E.2d 965. The determination, to the requisite degree of medical probability, that Zach failed to exercise reasonable care for her own safety and that this failure was the proximate cause of her death from lung cancer was not one of "those very rare instances" when causation "would [have] be[en] obvious to any layman." Id. at 285, 616 N.E.2d 965.

{¶ 16} Dr. Weinberg's proffered instruction was first tendered at the trial court's conference with counsel before closing arguments.[1] The instruction, entitled "PATIENT NEGLIGENCE," stated that Zach had "failed to exercise reasonable care for her own safety and that such failure was the proximate cause of [her] injury. A patient should accept and obey all reasonable advice, cautions and instructions given to her. A failure to do so may be a failure to use reasonable care for her own safety and well-being. If you find by the greater weight of the evidence that [Zach] failed to exercise reasonable care, then she was contributory negligent."

{¶ 17} "A jury instruction is proper if it correctly states the law and if it applies in light of the evidence adduced in the case. See *Murphy v. Carrollton Mfg. Co.* (1991), 61 Ohio St.3d 585, 591, 575 N.E.2d 828; *Pallini v. Dankowski* (1969), 17 Ohio St.2d 51, 53, 46 O.O.2d 267, 245 N.E.2d 353. In reviewing whether the evidence supports a particular jury instruction, an appellate court must 'determine whether the record contains evidence from which reasonable

---

1. As the proffered instruction was reduced to writing, was tendered to the court reporter at the trial court's direction, and is available for review in the exhibits for this appeal, Civ.R. 51(A) does not act as a bar to this court's consideration of the proffered instruction. See App.R. 9.

minds might reach the conclusion sought by the instruction.' *Murphy v. Carrollton Mfg. Co.,* 61 Ohio St.3d [585,] 591, 575 N.E.2d 828, quoting *Feterle v. Huettner* (1971), 28 Ohio St.2d 54, 57, 57 O.O.2d 213, 275 N.E.2d 340, syllabus." *Roetenberger v. Christ Hosp.,* 163 Ohio App.3d 555, 2005-Ohio-5205, 839 N.E.2d 441, at ¶ 14; see, also, *Werden v. Children's Hosp. Med. Ctr.,* 1st Dist. No. C–040889, 2006-Ohio-4600, 2006 WL 2571942, at ¶ 121–122.

{¶ 18} But contributory negligence is an affirmative defense: it is "a new matter which, assuming the complaint to be true, constitutes a defense to it." *State ex rel. Plain Dealer Publishing Co. v. Cleveland* (1996), 75 Ohio St.3d 31, 33, 661 N.E.2d 187, citing *Davis v. Cincinnati, Inc.* (1991), 81 Ohio App.3d 116, 119, 610 N.E.2d 496. A party must have sufficient notice of a proposed affirmative defense to dispute the "new matter."

{¶ 19} Civ.R. 8(C) thus requires that "[i]n pleading to a preceding pleading, a party shall set forth affirmatively * * * contributory negligence, * * * and any other matter constituting an avoidance or affirmative defense." Construing Civ.R. 8 and 15, the Ohio Supreme Court has held that "[a]ffirmative defenses other that those listed in Civ.R. 12(B) are waived if not raised in the pleadings or in an amendment to the pleadings." *Jim's Steak House, Inc. v. Cleveland* (1998), 81 Ohio St.3d 18, 20, 688 N.E.2d 506; see, also, *State ex rel. Plain Dealer Publishing Co. v. Cleveland,* 75 Ohio St.3d at 33, 661 N.E.2d 187 ("[a]n affirmative defense is waived under Civ.R. 12[H], unless it is presented * * * affirmatively in a responsive pleading under Civ.R. 8[C], or by amendment under Civ.R. 15"); *McSweeney v. Jackson* (1996), 117 Ohio App.3d 623, 629, 691 N.E.2d 303 (affirmative defense presented for the first time during opening argument is waived).

{¶ 20} Dr. Weinberg's original March 20, 2003 answer to Zach's complaint included, as the seventh defense raised, the affirmative defense of contributory patient negligence, stating, "The injury and damage, if any, to Plaintiffs, was the direct and proximate result of Plaintiffs' own negligence which substantially exceeded any negligence attributed to said defendants, and which negligence said answering defendants continue to deny."

{¶ 21} Five months later, in response to Zach's death and the substitution of her estate as plaintiff, Dr. Weinberg submitted an amended answer and omitted the contributory-negligence defense. Contrary to her assertion, the amended answer's sixth affirmative defense, disclaiming liability for acts by "those who were neither under [her] control nor an employee," did not provide the requisite notice of the "new matter" of patient negligence. Rather, such a claim is usually raised when a defendant alleges the intervening negligence of another health-care provider who is not a party to the action. That defense was also included in the

original answer as the fourth defense—four paragraphs before the affirmative defense specifically alleging Zach's own negligence as "the direct and proximate" cause of her injuries.

{¶ 22} Similarly, when Dr. Weinberg filed proposed jury instructions before the trial commenced, she again omitted a contributory-negligence instruction. Her pretrial statement and trial brief identified as the key issues to be explored at trial whether Dr. Weinberg had departed from the standard of care when she read the September 2001 chest film and whether Zach already had metastatic cancer when Dr. Weinberg read the film and thus had almost no chance of recovery.

{¶ 23} Pursuant to Civ.R. 8(C) and 12(H), Dr. Weinberg waived the affirmative defense of contributory patient negligence and thus was not entitled, on that basis, to the requested instruction. The first assignment of error is overruled.

{¶ 24} But Dr. Weinberg contends, in her second assignment of error, that the defense ultimately was not waived because she attempted to amend the pleadings to include the contributory-negligence defense. Civ.R. 15(B) allows a party to amend the pleadings to conform to the evidence presented at trial. And a party may appropriately raise an affirmative defense in an amended pleading. See *State ex rel. Plain Dealer Publishing Co. v. Cleveland,* 75 Ohio St.3d at 33, 661 N.E.2d 187; see, also, *Whisman v. Gator Invest. Properties, Inc.* (2002), 149 Ohio App.3d 225, 232, 776 N.E.2d 1126. Civ.R. 15(B) provides, "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment."

{¶ 25} While leave should be freely given, whether to permit an amendment to the pleadings is a matter consigned to the sound discretion of the trial court. See *State ex rel. Evans v. Bainbridge Twp. Trustees* (1983), 5 Ohio St.3d 41, 5 OBR 99, 448 N.E.2d 1159, paragraph three of the syllabus. Accordingly, a reviewing court will not reverse the trial court's ruling unless it is unreasonable, arbitrary, or unconscionable. See *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144. In applying this standard, a reviewing court "is not free to substitute its judgment for that of the trial judge." *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301. Rather, the trial court's exercise of its discretion will be affirmed if it exhibits a sound reasoning process that would support its decision. See *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.* (1990), 50 Ohio St.3d 157, 161, 553 N.E.2d 597.

{¶ 26} "The Ohio Supreme Court has held that an implied amendment under Civ.R. 15(B) is impermissible where it would result in substantial prejudice to a party. Factors to be considered in determining whether an implied consent has occurred are (1) whether the 'parties recognized that the unpleaded issue entered the case,' (2) whether the 'opposing party had a fair opportunity to address the tendered issue or would offer additional evidence if the case were retried on a different theory,' and (3) 'whether the witnesses were subjected to extensive cross-examination on the issue.'" *Whisman v. Gator Invest. Properties, Inc.*, 149 Ohio App.3d at 231–232, 776 N.E.2d 1126, quoting *State ex rel. Evans v. Bainbridge Twp. Trustees,* paragraph one of the syllabus.

{¶ 27} In this case, the trial court's decision to deny the motion for leave to amend was consistent with a sound exercise of its discretion. First, the motion to amend was filed on July 1, 2005—three months after the jury had returned its verdict—virtually eliminating any opportunity or reason Zach had to address the issue of patient negligence during the trial.

{¶ 28} Next, Dr. Weinberg contends that references in both opening statements and during the trial to Zach's failure to follow Dr. Chandler's advice for a follow-up chest x-ray indicated that the case was tried by implied consent on the issue of patient negligence. While each opening statement discussed Dr. Chandler's testimony, the arguments merely described the treatment Zach received after leaving Bethesda North Hospital or served to explain to the jury why Drs. Chandler and Hooker, who actually treated Zach, were not defendants in the trial. The jury was not advised that the evidence would show contributory patient negligence.

{¶ 29} At trial, Dr. Chandler testified about the course of treatment that Zach received. He testified about Zach's refusal to obtain a further chest x-ray. While he noted that she was a difficult patient, only once did he approach the issue of the possible effect of her conduct: "Maybe [the x-rays] would have shown something. Maybe they wouldn't because easily enough something could have happened between June 21st and October. You can get an unresectible tumor in three months or even shorter. It doesn't have to be a year." The jury received Dr. Chandler's testimony by having his deposition testimony read in open court. Dr. Chandler was deposed on April 29, 2004—one year before the trial—when he was still a defendant in the case.

{¶ 30} "Under Civ.R. 15(B), implied consent is not established merely because evidence bearing directly on an unpleaded issue was introduced without objection; it must appear that the parties understood the evidence was aimed at the unpleaded issue." *State ex rel. Evans v. Bainbridge Twp. Trustees,* para-

graph two of the syllabus. Here, the isolated references to patient negligence were not aimed at the unpleaded issue.

{¶ 31} Throughout the trial, Dr. Weinberg's theory of the case was that she had not deviated from the requisite standard of care and that even if she had, Zach had no chance of survival because of her preexisting cancer. Both Dr. Weinberg and Dr. Bates testified that she did not deviate from the standard of care in reading the September 2001 chest films. Dr. Cody stated that Zach's condition was terminal and that she did not have a better than 50 percent chance of survival.

{¶ 32} Both the original and the amended answers also asserted as defenses that Zach's injuries and death were caused by her "pre-existing condition and/or pathology" and that the underlying pathology was such that optimal medical intervention "at any time in the clinical course would not have prevented the pathological condition" that ultimately killed Zach. Moreover, no expert witness, save for the equivocal statement of Dr. Chandler, offered testimony on the proximate effect of Zach's negligence.

{¶ 33} Here, the trial court acted reasonably in denying leave to amend. Dr. Weinberg did not move to amend the pleadings until well after the end of the trial. The record conclusively shows that the issue of patient negligence was not tried with the express or implied consent of the parties, that the affirmative defense was specifically abandoned by Dr. Weinberg before trial, and that it was inconsistent with her theory of the case. Dr. Weinberg was not entitled to amend the pleadings and thus was not entitled to her proffered jury instruction. The second assignment of error is overruled.

### Closing Argument Comments

{¶ 34} In her third assignment of error, Dr. Weinberg argues that the trial court erred in permitting Zach's counsel to make improper and inflammatory statements to the jury during closing argument. She claims that Zach's counsel overstepped the bounds of proper argument when he referred to the testimony of another doctor that was not in evidence, referred to the wealth disparity between Dr. Weinberg, Zach, and her surviving daughter, Stephanie, and attacked the character of Dr. Weinberg's trial counsel.

{¶ 35} "Medical malpractice cases engender strong emotion, and there is nothing wrong with passionate argument." *Clark v. Doe* (1997), 119 Ohio App.3d 296, 307, 695 N.E.2d 276. Accordingly, counsel is afforded wide latitude during closing argument. See *Pesek v. Univ. Neurologists Assn.* (2000), 87 Ohio St.3d 495, 501, 721 N.E.2d 1011. But counsel must refrain from making arguments not supported by the evidence and must avoid inappropriate and offensive remarks concerning opposing counsel and the witnesses. See *Roeten-*

*berger v. Christ Hosp.,* 163 Ohio App.3d 555, 2005-Ohio-5205, 839 N.E.2d 441, at ¶ 9; see, also, *Bowden v. Annenberg,* 1st Dist. No. C–040499, 2005-Ohio-6515, 2005 WL 3338935, at ¶ 35.

{¶ 36} In his closing argument, Zach's counsel began to refer to the deposition testimony of a Dr. Einhorn, given in a separate proceeding, on the stages of lung cancer. Dr. Weinberg's counsel promptly objected, and the trial court agreed that Zach could not comment on matters not in evidence. Since Dr. Weinberg did not ask for a curative instruction relative to Zach's remarks, she cannot predicate error on objections that, in effect, had been sustained by the trial court. See *Bowden v. Annenberg,* 2005-Ohio-6515, 2005 WL 3338935, at ¶ 19.

{¶ 37} Dr. Weinberg's trial counsel, a skilled and experienced attorney specializing in medical-malpractice trials, did not raise a contemporaneous objection to the other comments by Zach's counsel on wealth disparity and whether Dr. Weinberg's counsel should have inquired into possible drug use by Stephanie Zach. Those comments are subject to review under a plain-error standard. We cannot say that these comments so "seriously affect[ed] the basic fairness, integrity, or public reputation of the judicial process" that we must overturn a jury verdict reached after seven days of testimony and argument. *Goldfuss v. Davidson* (1997), 79 Ohio St.3d 116, 679 N.E.2d 1099, syllabus.

{¶ 38} Although Zach's counsel made several inappropriate comments during closing argument, these comments did not create an atmosphere of passion or prejudice, and they did not deprive Dr. Weinberg of a fair and impartial trial. See *Fehrenbach v. O'Malley,* 164 Ohio App.3d 80, 2005-Ohio-5554, 841 N.E.2d 350, at ¶ 23. The third assignment of error is overruled.

### Newly Discovered Evidence

{¶ 39} In Dr. Weinberg's fourth assignment, she argues that the trial court erred in denying her motion for a new trial based on newly discovered evidence. The motion was filed on August 3, 2005, nearly two months after the entry of judgment on the jury's verdict. While Civ.R. 59(A)(8) provides that a new trial may be granted if the moving party presents "[n]ewly discovered evidence, material for the party applying, which with reasonable diligence he could not have discovered and produced at trial," Civ.R. 59(B) requires that a motion for a new trial shall be served "not later than fourteen days after the entry of the judgment." See *Harvey v. Hwang,* 103 Ohio St.3d 16, 2004-Ohio-4112, 812 N.E.2d 1275, at ¶ 11.

{¶ 40} While the time for Dr. Weinberg to move under Civ.R. 59 had expired, under Civ.R. 60(B)(2), a party has up to one year following judgment to move for

relief from that judgment due to "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B)." Dr. Weinberg had a remedy available and did not avail herself of it. The assignment of error is overruled.

## Rereading Testimony to the Jury

{¶ 41} Dr. Weinberg's fifth assignment of error, in which she contends that the trial court erred in denying her motion for a mistrial based on the jury's request, submitted shortly after it began its deliberations, that all expert evidence be reread, is overruled.

{¶ 42} During the deliberations, the trial court received a question from the jurors, asking that Dr. Weinberg's testimony and the depositions of the expert witnesses who testified at trial be provided to them. After discussing the question with counsel for both parties, and questioning the jury foreperson, the trial court agreed to cause certain portions of Dr. Weinberg's testimony relating to her interpretation of Zach's chest x-rays to be read to the jury.

{¶ 43} The question whether to reread testimony to the jury during its deliberations has always been left to the sound discretion of the trial court. See *State v. Berry* (1971), 25 Ohio St.2d 255, 54 O.O.2d 374, 267 N.E.2d 775, paragraph three of the syllabus; see, also, *Sabruno v. Furey* (Aug. 19, 1994), 11th Dist. No. 93–L–079, 1994 WL 590301. Here, we find no abuse of discretion in the trial court's decision, made after an inquiry into the jury's concerns, after consultation with counsel, and with the acquiescence of Dr. Weinberg's counsel to limit the testimony reread to the jury with an appropriate limiting instruction.

## Prejudgment Interest

{¶ 44} In her sixth assignment of error, Dr. Weinberg argues that the trial court abused its discretion in awarding prejudgment interest, when Dr. Weinberg had a good-faith, objectively reasonable belief that she had no liability and yet made a good-faith settlement offer after the jury had started its deliberations.

{¶ 45} Prejudgment interest may be awarded pursuant to R.C. 1343.03(C). "The purpose of R.C. 1343.03(C) is to encourage litigants to make a good faith effort to settle their case, thereby conserving legal resources and promoting judicial economy." *Peyko v. Frederick* (1986), 25 Ohio St.3d 164, 167, 25 OBR 207, 495 N.E.2d 918. Unless the record sustains the conclusion that the trial court abused its discretion, an appellate court will not reverse an award of prejudgment interest under R.C. 1343.03(C), where the trial court has found that the party ordered to pay prejudgment interest failed to make a good-faith effort to settle and that the party to whom the prejudgment interest is to be paid did

not fail to make a good-faith effort to settle. See *Andre v. Case Design, Inc.*, 154 Ohio App.3d 323, 2003-Ohio-4960, 797 N.E.2d 132, at ¶ 7–9.

{¶ 46} The trial court's award of prejudgment interest must stand where there is evidence that Zach offered in writing to settle the case for $750,000 well before trial, that the defense ignored the offer, and that the defense made two "high/low" offers of settlement only after the jury had begun its deliberations. The sixth assignment of error is overruled.

## Conclusion

{¶ 47} Having overruled each of Dr. Weinberg's assignments of error, the judgments of the trial court are affirmed.

Judgments affirmed.

HENDON, J., concurs.

RUPERT A. DOAN, J., was a member of the panel, but died before the release of this opinion.