# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| CHRIS CLARK, | : | APPEAL NO. C-240294 |
| | | TRIAL NO. A-1302874 |
| and | : | |
| KATHY CLARK, | : | |
| Plaintiffs-Appellants, | : | *JUDGMENT ENTRY* |
| vs. | : | |
| ABUBAKAR ATIQ DURRANI, M.D., | : | |
| and | : | |
| CENTER FOR ADVANCED SPINE TECHNOLOGIES, INC., | : | |
| | : | |
| Defendants-Appellants, | : | |
| and | : | |
| WEST CHESTER HOSPITAL, LLC, | : | |
| UC HEALTH, | : | |
| and | : | |
| JOURNEY LITE OF CINCINNATI, LLC, | : | |
| Defendants. | : | |
| | : | |

This cause was heard upon the appeal, the record, the briefs, and arguments.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 8/29/2025 per order of the court.**

**By:**_____
          **Administrative Judge**

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

CHRIS CLARK,

  and

KATHY CLARK,

    Plaintiffs-Appellees,

  vs.

ABUBAKAR ATIQ DURRANI, M.D.,

  and

CENTER FOR ADVANCED SPINE
TECHNOLOGIES, INC.,

    Defendants-Appellants,

  and

WEST CHESTER HOSPITAL, LLC,

UC HEALTH,

  and

JOURNEY LITE OF CINCINNATI, LLC,

    Defendants.

:    APPEAL NO.  C-240294
:    TRIAL NO.   A-1302874

:

:

:    *O P I N I O N*

:

:

:

:

:

:

:

:

:

:

:

:

:

:

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: August 29, 2025

*Statman Harris, LLC,* and *Alan J. Statman*, for Plaintiffs-Appellees,

*Taft Stettinius & Hollister LLP*, *Philip D. Williamson*, *Aaron M. Herzig* and *Russell S. Sayre*, for Defendants-Appellants.

**MOORE, Judge.**

**{¶1}** Defendants-appellants Dr. Abubaker Atiq Durrani and Center for Advanced Spine Technologies, Inc., ("CAST") (together, "Durrani") appeal the trial court's judgment denying Durrani's motions for judgment notwithstanding the verdict or, in the alternative, for a new trial.

**{¶2}** On appeal, Durrani argues the trial court (1) should have given a comparative-negligence jury instruction, (2) improperly instructed the jury to draw a negative inference from Dr. Durrani's absence at trial, (3) improperly permitted Dr. Keith Wilkey to testify as an expert, and (4) erred by allowing plaintiffs to pursue claims for past medical expenses. Durrani asserts that these errors by the trial court in denying their posttrial motions were not harmless.

## I. Factual and Procedural History

**{¶3}** This case is one of the numerous cases that have come before this court which are commonly referred to as the "Durrani Cases." While the legal questions raised in these appeals are often the same or similar, each plaintiff has their own story of how they came under Dr. Durrani's care.

**{¶4}** Here, plaintiff-appellee Chris Clark worked as a machinist and, later, as a carpet cleaner. When Clark was 19, a semi-truck rear-ended the car he was driving and Clark experienced back pain for years afterward.

**{¶5}** Clark's family physician, Dr. Deborah Pillow, referred him to Dr. Set Shahbabian and for an MRI, which revealed disc bulges, protrusions, and herniations up and down the lumbar region of Clark's spine. Clark took pain medication daily and received steroid injections on three occasions. Neither the pain medication nor the injections improved his back pain.

**{¶6}** In November 2012, Dr. Pillow referred Clark to Dr. Abubaker Atiq

Durrani at CAST for treatment of his low back pain. On December 7, 2012, Dr. Durrani performed surgery on Clark's lumbar spine at the L4-L5 region.

### Clark and his wife file a complaint against defendants.

**{¶7}** Clark filed a complaint and jury demand against Dr. Durrani and his medical practice, CAST. The complaint also named a number of other defendants who were all eventually voluntarily dismissed from the case.

**{¶8}** With respect to Durrani, the complaint alleged (1) that Dr. Durrani negligently performed the surgery, improperly diagnosed Clark's condition, and medically mismanaged and mistreated Clark, (2) that CAST was vicariously liable for Dr. Durrani's actions, (3) that CAST was negligent in hiring, retaining, credentialing, and supervising Dr. Durrani due to foreknowledge that Dr. Durrani's privileges at other hospitals had been terminated, (4) that Dr. Durrani committed battery by performing an unnecessary surgery, (5) that Dr. Durrani committed fraud, (6) intentional infliction of emotional distress, (7) spoliation of medical records evidence, (8) that Kathy Clark, Clark's wife, suffered loss of consortium and medical expenses, and (9) negligence per se.

### Pretrial Filings

**{¶9}** In March 2020, plaintiffs filed a motion to join United Healthcare as an involuntary plaintiff because of its subrogation interest with respect to payments it made for portions of Clark's treatment. The motion noted that while all parties with a possible subrogation interest had been notified of the lawsuit filed by their insured, they had chosen not to be involved.

**{¶10}** The court responded by ordering that plaintiffs make United HealthCare a party plaintiff. They did. And, although United Healthcare was served with a summons and the complaint, it never entered an appearance.

### The Trial

{¶11} Prior to the start of trial, defendants filed a motion in limine to exclude testimony regarding Dr. Durrani absconding to Pakistan amid the pending medical malpractice cases against him. The trial court stated that it would not allow testimony regarding Dr. Durrani's departure, but it would not restrict comments about him residing in Pakistan, and there would be a jury instruction regarding such testimony.

{¶12} The matter proceeded to a jury trial in August 2021.

### *Dr. Keith Wilkey's Testimony*

{¶13} At trial, Clark relied on the expert medical testimony of Dr. Keith Wilkey. Dr. Wilkey is a board-certified orthopedic spine surgeon and a member and fellow of the American Academy of Orthopedic Surgeons, and holds memberships in the North American Spine Society and the European Spine Society. He received training in offering or recommending spine surgeries from the Leatherman Spine Institute and had performed "[p]robably tens of thousands" of spine surgeries.

{¶14} Prior to COVID, Dr. Wilkey was an orthopedic spine surgeon in New York where he dedicated more than 50 percent of his professional time to the active clinical practice of medicine. Then, in July 2020, New York shut down all elective surgeries—seven years after Clark's complaint had been filed. At the time of trial, Dr. Wilkey was a medical director at United Healthcare, and his duties included reviewing medical records and deciding whether surgery was appropriate.

{¶15} Defendants objected to Dr. Wilkey's testimony at trial, arguing that Dr. Wilkey did not spend 50 percent of his professional time in the active clinical practice of medicine or instructing at an accredited university. Defendants cited *Johnson v. Abdullah*, 2021-Ohio-3304, for the proposition that a medical expert must meet these requirements at the time of trial.

**{¶16}** Plaintiffs responded that, but for COVID, at the time of the originally scheduled trial date, Dr. Wilkey would have been practicing full time and therefore would have dedicated more than 50 percent of his professional time to the active clinical practice of medicine. Plaintiffs further argued Dr. Wilkey's affidavit of merit, which was filed with the complaint, shows he had been involved with the case since its filing over eight years prior.

**{¶17}** The trial court overruled the objection based on Evid.R. 601's purpose in preventing professional witnesses from testifying. It cited the rule's exception that if the trial been conducted at the originally scheduled time, and the delay "wasn't the fault of the person calling the witness, and the doctor would have been qualified to testify at that time, there [was] no reason for [the court not to allow] that witness to testify." The court concluded that, had it not been for COVID, Dr. Wilkey would have been able to testify had the trial been conducted at the scheduled time, and that the lapse of time was not plaintiffs' fault. The court added Dr. Wilkey was not a "professional witness" because he was competent to testify prior to COVID and remained competent to testify after the COVID restrictions were lifted.

**{¶18}** At trial, Dr. Wilkey explained the applicable standard of care as it relates to the type of surgery Dr. Durrani performed on Clark. He testified that Dr. Durrani's performance of the surgery on and his subsequent treatment of Clark deviated from that applicable standard of care and Clark was damaged as a result.

### *Jury Instructions*

**{¶19}** The trial court denied defendants' request for a comparative-negligence instruction. In explaining its decision, the court stated that there is no comparative negligence in Ohio, and plaintiffs needed only to prove their claims by a preponderance of the evidence. Defendants objected to the court's decision, arguing

that comparative negligence applied under R.C. 2315.33.

**{¶20}** With respect to Durrani's absence, the court provided the following instructions to the jury:

The defendant, Dr. Durrani, has not attended these proceedings in person. He is represented by counsel. You shall not speculate on why he is not present or consider his absence for any purpose except as instructed below . . . Dr. Durrani has voluntarily left the jurisdiction removing himself from plaintiff's ability to subpoena him to trial . . . When a party, such as Dr. Durrani, has relevant evidence or testimony within his or her control, and the party fails to produce that relevant evidence or testimony, that failure gives rise to an inference that the evidence or testimony is unfavorable to that party.

The trial court further instructed the jury as to inference:

To infer or to make an inference is to reach a reasonable conclusion of fact which you may, but are not required to, make from other facts which you find have been established by direct evidence. Whether an inference is made rests entirely with you . . . You may not build one inference upon another inference. But you may make more than one inference from the same facts or circumstances.

Defendants objected to both instructions.

### The Jury's Verdicts

**{¶21}** The jury returned verdicts in plaintiffs' favor on the claims of negligence, fraudulent misrepresentation, and loss of consortium. The jury found in favor of defendants as to the claims of failure to obtain informed consent and battery.

**{¶22}** The jury awarded Clark $485,000 in compensatory damages: $75,000

in past medical expenses, $10,000 in future medical expenses, $300,000 in past pain and suffering, $50,000 in future pain and suffering, $40,000 in past loss of enjoyment of life, and $10,000 in future loss of enjoyment of life. Kathy Clark was awarded $10,000 on her loss-of-consortium claim. The jury also awarded Clark attorney's fees and $200,000 in punitive damages.

**{¶23}** Defendants filed two separate motions for judgments notwithstanding the verdict ("JNOV"), or, pursuant to Civ.R. 59(A)(1)-(9), for a new trial in the alternative. The trial court denied these motions in a January 6, 2023 entry.[1]

**{¶24}** On March 20, 2024, defendants filed a memorandum in support of their motions based on *Hounchell v. Durrani*, 2023-Ohio-2501 (1st Dist.), in which this court held that the jury instruction regarding Dr. Durrani's absence allowed the jury to infer that Dr. Durrani was absent because of a consciousness of guilt.

**{¶25}** On April 22, 2024, the trial court entered a final, appealable judgment based on the jury verdicts and its final decisions on the remaining posttrial motions. As discussed below, the trial court again denied Durrani's JNOV motions.

**{¶26}** This appeal followed. Each issue raised on appeal was raised in defendants' post-trial motions and thus preserved for review by this court.

## II.   *Analysis*

**{¶27}** In the sole assignment of error, Durrani argues the trial court should have granted the post-trial motions because the court (1) failed to instruct the jury on comparative negligence, (2) improperly instructed the jury to draw a negative inference from Dr. Durrani's absence, (3) improperly permitted Dr. Wilkey to testify as an expert, despite his lack of active clinical practice, and (4) erred by allowing Clark

---

[1] Plaintiffs' motions for prejudgment interest and attorney's fees remained pending after the trial court made the January 6, 2023 entry.

to pursue claims for past medical expenses at trial. Durrani also argues these errors were not harmless.

## JNOV Motions

**{¶28}** Under Civ.R. 50(B)(1), a party may move for a JNOV after the trial court enters judgment on the jury's verdict. Moving for JNOV challenges "the legal sufficiency of the evidence." *Alonso v. Thomas*, 2021-Ohio-341, ¶ 55 (9th Dist.). Indeed, "[a] motion for [JNOV] is used to determine only one issue: whether the evidence is totally insufficient to support the verdict." (Citations omitted.) *Grieser v. Janis*, 2017-Ohio-8896, ¶ 15 (10th Dist.). Here, Durrani fails to articulate an argument challenging the sufficiency of Clark's evidence. We "will not create an argument in support of an assignment of error where an appellant fails to develop one." *Fontain v. Sandhu*, 2021-Ohio-2750, ¶ 15 (1st Dist.).

## Motions for a New Trial

**{¶29}** A trial court may grant a motion for a new trial under Civ.R. 59(A) for a variety of reasons. Civ.R. 59(A)(1)-(9). The standard of review of a trial court's ruling on a Civ.R. 59 motion depends upon the grounds for the motion. *See Berardo v. Felderman-Swearingen*, 2020-Ohio-4271, ¶ 7 (1st Dist.); *Yenni v. Yenni*, 2022-Ohio-2867, ¶ 60 (8th Dist.). While Durrani fails to specify which subsections of Civ.R. 59(A) apply to each issue raised on appeal, as discussed below, we will apply the applicable standard of review based on the nature of the issue being reveiwed.

### A. *The denial of the comparative-negligence instruction was not an abuse of discretion.*

**{¶30}** Durrani claims to be entitled to a new trial based on the trial court's refusal to instruct the jury on comparative negligence. A trial court should give a requested instruction if (1) the instruction is a correct statement of the law, (2) it is

applicable to the facts of the case, and (3) a reasonable jury could reach the conclusion sought by the instruction. *Niehaus v. Durrani*, 2023-Ohio-4818, ¶ 34 (1st Dist.), citing *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 591 (1991). A trial court will not instruct the jury where there is no evidence to support an issue. *Sanders v. Fridd*, 2013-Ohio-4338, ¶ 17 (10th Dist.), quoting *Murphy* at 591. A trial court's decision to grant or deny a proposed jury instruction is reviewed for an abuse of discretion. *Niehaus* at ¶ 35. A trial court abuses its discretion when its decision is unreasonable, unconscionable, or arbitrary. *Id.*

**{¶31}** Ohio law recognizes contributory negligence as a defense in medical malpractice cases. *Viox v. Weinberg*, 2006-Ohio-5075, ¶ 13 (1st Dist.). A defendant doctor must prove the plaintiff patient breached a duty, proximately causing his own injury. *Segedy v. Cardiothoracic & Vascular Surgery of Akron, Inc.*, 2009-Ohio-2460 (9th Dist.), quoting *Brinkmoeller v. Wilson*, 41 Ohio St.2d 223, 226 (1975). Thus, the defendant must show the plaintiff's own "want of ordinary care . . . which combined and concurred with the defendant's negligence and contributed to the injury as a *proximate* cause thereof, and as an element without which the injury would not have occurred." (Emphasis added.) *Id.* In other words, "[t]he contributory negligence of the patient must have been an active and efficient contributing cause of the injury that is the basis of the patient's claim." *Viox* at ¶ 13.

**{¶32}** In its January 6, 2023 entry, the trial court distinguished Dr. Durrani's recommendation that Clark engage in postsurgical physical therapy from *requiring* him to do so. The court further concluded Clark could not be deemed to have been contributorily negligent for failing to complete physical therapy prescribed by the same surgeon who recommended and performed an unnecessary surgery.

**{¶33}** In his merit brief, Durrani references Dr. Horn's recommendation that

Clark do physical therapy and Dr. Kaloostian's testimony that physical therapy was an appropriate recommendation after Clark's back surgeries. Durrani asserts that recommending physical therapy and requiring physical therapy were the same thing. Durrani further argues that a physician cannot "require" a patient to do anything, and whether his advice was an "order" or a "recommendation" is irrelevant. Durrani contends that, as this would be a fact for the jury to decide, the trial court incorrectly concluded that a jury instruction was not warranted.

**{¶34}** Clark complained of postsurgical pain running down his legs, headaches, swelling in the incision, and fluid leaking from his back, which was accumulating at the surgical site. Clark testified he did not have any of these symptoms before being treated by Dr. Durrani. Clark also testified that, before the surgery, he only experienced pain going up his back.

**{¶35}** While defense experts testified that the physical therapy prescribed by Dr. Durrani was appropriate, there was no evidence to suggest Clark's failure to fully comply with physical therapy caused or contributed to the postsurgical injuries he complained of. Reasonable minds, therefore, could not have concluded that Clark contributed to the pain and discomfort he experienced after the unnecessary surgery was performed on him. Accordingly, the trial court did not abuse its discretion in denying Durrani's request for a comparative-negligence instruction.

**B.** ***The trial court's instructions did not cause the jury to draw negative inferences from Dr. Durrani's absence.***

**{¶36}** In addition to arguing that the trial court failed to give the previously discussed jury instruction, Durrani claims that the instruction regarding Dr. Durrani's absence was also improper. On appeal, "'[t]he question of whether a jury instruction is legally correct and factually warranted is subject to de novo review.'" *Jones v.*

*Durrani*, 2024-Ohio-1776, ¶ 29 (1st Dist.), quoting *Cromer v. Children's Hosp. Med. Ctr. of Akron,* 2015-Ohio-229, ¶ 22.

**{¶37}** An adverse-inference instruction "'has its origin in the theory that the failure to produce evidence which a fearless claimant would naturally produce permits the inference that the tenor of the evidence would be unfavorable to such claimant.'" *Id.* at ¶ 33, quoting *Silveous v. Rensch*, 20 Ohio St.2d 82, 84 (1969).

**{¶38}** In *Jones,* the trial court instructed the jury using the exact verbiage as in the instant matter. *Id.* at ¶ 30. The *Jones* court initially concluded that the trial court erred in giving the jury instruction because it "was not permissive nor limited to evidence that would naturally be produced" as it "permit[ted] only the inference that the testimony or evidence in Dr. Durrani's possession would be unfavorable to him." *Id.* at ¶ 34. This court then considered the instruction as a whole to determine whether it misled the jury such that it materially affected defendants' substantial rights. *Id.* at ¶ 35. This court ultimately held that the instruction, as a whole, did not prejudice defendants because it was apparent that the inference was permissive, not required, and that it also "clearly set forth what evidence should be considered by the jury in rendering its decision." *Id.* at ¶ 38. We further held that a thorough review of the entire proceeding revealed that the jury was not misled; as in the instant matter, we noted the jury found for Durrani on some claims. *Id.* at 39. That, combined with jury interrogatories which showed the jury relied on actual evidence in the record, demonstrated the trial court's instruction did not affect the jury's verdict. *Id.*

**{¶39}** Here, as in *Jones*, the trial court informed the jury that it had discretion as to what inferences it drew, including inferences from Dr. Durrani's absence. There is no indication on the face of the record that this permissive inference misled the jury or tainted its decision. Accordingly, we hold the trial court did not abuse its discretion

by giving the jury instruction regarding Dr. Durrani's absence.

### C. *Dr. Wilkey was an expert qualified to testify at the time of the trial.*

**{¶40}** To establish his medical malpractice claim, Clark relied on the expert testimony of Dr. Wilkey. Over defendants' objection at trial, Dr. Wilkey testified that Dr. Durrani breached the standard of care and that the breach caused Clark's injuries. Durrani now argues the trial court erred in allowing Dr. Wilkey's expert testimony.

**{¶41}** A trial court has discretion to determine whether a witness is competent to testify as an expert under Evid.R. 601, and the trial court's decision will not be reversed absent a clear showing that the court abused its discretion. *Celmer v. Rodgers*, 2007-Ohio-3697, ¶ 19. On appeal, Durrani argues that the trial court abused that discretion by permitting Dr. Wilkey to testify.

**{¶42}** Under the 2022 version of Evid.R. 601(B), a witness can testify as a medical expert "on the issue of liability in any medical claim" if the witness is licensed to practice medicine, devotes "at least one-half of his or her professional time to the active clinical practice in his or her field of licensure, or to its instruction in an accredited school," and "the person practices in the same or substantially similar specialty as the defendant."

**{¶43}** The *Celmer* Court reasoned that Evid.R. 601(B)'s use of the present tense did not preclude the trial court from exercising its discretion where the physician "satisfied the requirements of Evid.R. 601(D) *at the time the cause of action accrued*, at the time of filing suit, and during the first three years of this litigation." (Emphasis added.) *Celmer* at ¶ 26. The Court concluded the trial court was not unreasonable or arbitrary when it found that the doctor's hiatus from the practice of medicine did not render him incompetent to testify and turn him into the "professional witness" that Evid.R. 601 guards against. *Id.*

**{¶44}** In *Johnson*, the Ohio Supreme Court declined to expand the *Celmer* exception but expressly reiterated the general rule that "the witness must meet the active-clinical-practice requirement of Evid.R. 601 *at the time the testimony is offered at trial*." (Emphasis added.) *Johnson*, 2021-Ohio-3304, at ¶ 20, quoting *Celmer* at ¶ 27. The Court held that "*Celmer* sets forth a limited exception to that rule, and the exception is clearly confined to the particular facts of that case." *Id*. Thus, if the limited exception announced in *Celmer*is inapplicable*,* the proponent of expert testimony must show that the proposed expert "was engaged in the active clinical practice of medicine at the time of trial." *Id*. at ¶ 29. Our analysis, however, does not end here.

**{¶45}** Evid.R. 601(B)(5)(b) was amended in July 2023 to require a medical expert to "devote[] at least one-half of his or her professional time to the active clinical practice in his or her field of licensure, or to its instruction in an accredited school, *at either the time the negligent act is alleged to have occurred or the date the claim accrued*." (Emphasis added.) The staff notes state, "Division (B)(5)(b) [was] amended to clarify the time at which the active clinical practice requirement is needed to qualify the witness as an expert witness, in response to the Supreme Court of Ohio's ruling in *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304." Staff Notes, Evid.R. 601.

**{¶46}** Durrani asserts *Johnson* controls as it forbids a trial court from creating new exceptions outside of the one laid out in *Celmer*. Durrani further argues that the July 1, 2023 amendment to Evid.R. 601(B)(5)(b) does not apply because the trial occurred in September 2021. This court has previously rejected this argument.

**{¶47}** Adopting Durrani's position would create a requirement that "would preclude anyone from taking a temporary leave of absence for any number of reasons, including maternity or paternity leave, a sabbatical, or in this case, a global pandemic." *Miles v. Cleveland Clinic Health Sys.-East Region*, 2023-Ohio-2582, ¶ 19 (8th Dist.).

Further, the holding in *Johnson* and amendments to Evid.R. 601 do not implicate such strict application; even the dissent in *Celmer* at ¶ 35 (Cupp, J., dissenting)—which concluded there was no exception to Evid.R. 601—stated that a temporary absence of a short duration, such as a sabbatical, would not "automatically render an otherwise qualified medical expert incompetent to testify." *Id.* at ¶ 19.

**{¶48}** Additionally, Evid.R. 1102(Y) provides that the amended version of Evid.R. 601(B)(5)(b) applies to cases that were pending when the amendment came into effect, unless its application "would not be feasible or would work injustice, in which event the former procedure applies." Nothing in the record suggests that permitting Dr. Wilkey's testimony was infeasible or would work injustice.

**{¶49}** Further, the amendment became effective prior to the trial court's April 2024 entry of final judgment on all posttrial motions—including Durrani's revived JNOV motion filed in March 2024—and this matter has remained pending throughout this appeal. *See Courtney v. Durrani*, 2025-Ohio-2335, ¶ 72-75 (1st Dist.); *Ravenscraft/Bowling v. Durrani*, 2025-Ohio-2900, ¶ 43-46 (1st Dist.). Dr. Wilkey, therefore, was qualified to testify as an expert under Evid.R. 601(B)(5)(b), as amended.

**{¶50}** We, therefore, once again, reject Durrani's challenge to Dr. Wilkey's qualifications as an expert. Accordingly, the trial court did not abuse its discretion when it permitted Dr. Wilkey's testimony.

### D. *The trial court did not err in awarding past medical expenses*

**{¶51}** Durrani argues that, because Clark failed to join United Healthcare, the trial court should have vacated Clark's damages for past medical expenses. Durrani further argues that Clark was not the real party in interest because United Healthcare paid Clark's past medical expenses.

*Real Party in Interest and Joinder*

**{¶52}** The record shows that plaintiffs followed the trial court's order to join United Healthcare as an involuntary plaintiff. United Healthcare chose not to enter an appearance. Although the trial court concluded in its January 2023 entry that United Healthcare "could and should have been joined as a party to this action under Civ.R. 19(A)," it was unwilling to grant defendants' request to vacate Clark's award for past medical expenses as "Defendants did not raise the real-party-in-interest issue until less than one week before the trial commenced," when it was "no longer possible for [the] Court to cause United Healthcare to join this action before the scheduled trial date." The entry further stated, ". . . in order to prevent Defendants from being prejudiced by the failure to join United Healthcare as a party to this action before trial, [this Court] orders that the $75,000 award to Plaintiff for past medical expenses will not be paid to Plaintiff without the release that is necessary from Defendants in this case."

**{¶53}** Actions must be prosecuted by "the real party in interest." *Bender v. Durrani*, 2024-Ohio-1258, ¶ 129 (1st Dist.), quoting Civ.R. 17(A). "The purpose behind the real party in interest rule is . . . to enable the defendant to avail himself of evidence and defenses that the defendant has against the real party in interest, and to assure him finality of the judgment, and that he will be protected against another suit brought by the real party at interest on the same matter." *Setters v. Durrani*, 2020-Ohio-6859, ¶ 54 (1st Dist.), quoting *Shealy v. Campbell*, 20 Ohio St.3d 23, 24-25 (1985). Thus, the real-party-in-interest rule concerns proper party joinder. *McCann v. Durrani*, 2023-Ohio-3953, ¶ 21 (1st Dist.). Further, under Civ.R. 19(A), a person who "has an interest relating to the subject of the action as an assignor, assignee, subrogor, or subrogee" is a necessary party. *Id.*

**{¶54}** In *McCann*, the plaintiff's medical expenses were paid by her insurer. *Id*. at ¶ 15, 17. We held that "in a case where the insurer only paid part of a plaintiff's damages, the plaintiff has standing and is also a real party in interest along with her insurer." *Id*. at ¶ 27.

**{¶55}** Of note, the parties stipulated that the amount of past medical expenses was correct in that United Healthcare made medical payments in the amount of $67,413.21. United Healthcare had a subrogation agreement with Clark, which gave United Healthcare a contractual subrogation claim, which entitled it to collect a share of the damages awarded to Clark as reimbursement for medical payments it made on Clark's behalf. *See* R.C. 2323.44. Clark, therefore, had standing regarding past medical expenses and it was not necessary to join United Healthcare. *See Bender* at ¶ 122-134 (holding appellee was the real party in interest where the insurance company only paid a portion of appellee's past medical expenses and had a lien against appellee's damages for reimbursement of expenses paid by the insurance company).

*Defendants were not exposed to double damages.*

**{¶56}** Further, the subrogation lien against Clark's awarded damages protected Durrani's interest; as stated by the trial court, defendants were not subject to double liability because United Healthcare can only collect from Clark's verdict against defendants. *See id*. at ¶ 132; *see also Courtney*, 2025-Ohio-2335, at ¶ 96 (1st Dist.) (the trial court cured the insurers' absence from the trial by protecting Durrani from the risk of double damages).

**{¶57}** The trial court did not err in awarding past medical expenses to Clark.

### III.    Conclusion

**{¶58}** As the trial court did not err, this court declines to address Durrani's harmless-error argument.

**{¶59}** Construing the evidence in the light most favorable to plaintiffs, the trial court did not err in denying defendants' JNOV motions. Reasonable minds could not conclude in defendants' favor, and the weight of the evidence was not contrary to the judgment and no reason for good cause to grant the motion was shown. The trial court did not abuse its discretion by rejecting defendants' request for a comparative-negligence instruction, permitting Dr. Wilkey to testify as an expert, or granting Clark's motion for past medical expenses. The trial court did not err in giving its instruction on Dr. Durrani's absence. Accordingly, Durrani's motion for a new trial was properly denied. Durrani's sole assignment of error is overruled. The judgment of the trial court is affirmed.

Judgment affirmed.

**ZAYAS, P.J.,** and **BOCK, J.,** concur.