[Cite as *Striff v. Luke Med. Practitioners, Inc.*, 2010-Ohio-6261.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### ALLEN COUNTY

CAROLE E. STRIFF, ADMR.,
INDIVIDUALLY AND AS ADMR. OF THE
ESTATE OF JEFFREY A. STRIFF,
DECEASED,                                                    CASE NO.  1-10-15

      PLAINTIFF-APPELLANT,

      v.

LUKE MEDICAL PRACTITIONERS,                    O P I N I O N
INC., ET AL.,

      DEFENDANTS-APPELLEES.

Appeal from Allen County Common Pleas Court
Trial Court No. CV2008-0189

**Judgment Affirmed**

**Date of Decision:   December 20, 2010**

APPEARANCES:

    *Robert W. Kerpsack*  for Appellant

    *James F. Nooney* for Appellees, Luke Medical Practitioners, Inc.,
        Jay M. Martin, M.D. and Melisa C. Bodkin, C.N.P.

    *Michael P. Murphy* for Appellees, Pandora Family Physicians, Inc.,
        and Steven K. McCullough, D.O.

    *Donald J. Moracz*  for Appellees, Horstman & Klir, M.D., Inc.

Case No. 1-10-15

**WILLAMOWSKI, P.J.,**

{¶1} Plaintiff-Appellant, Carole E. Striff ("Appellant"), individually and as Administrator of the Estate of Jeffrey Striff, deceased ("Mr. Striff" or "the decedent"), appeals the judgment of the Allen County Court of Common Pleas in favor of Defendants-Appellees. Appellant claims that there were numerous irregularities and errors pertaining to the jury trial in which Appellant was seeking compensatory damages for the wrongful death of her husband, caused by the alleged medical malpractice of Defendants-Appellees: Steven K. McCullough, D.O ("Dr. McCullough"), Wesley A. Klir, M.D., Inc. ("Dr. Klir"), Jay M. Martin, M.D. ("Dr. Martin"), Melisa C. Bodkin, C.N.P. ("Nurse Bodkin"), and their employers. For the reasons set forth below, the judgment is affirmed.

{¶2} Mr. Striff received medical treatment from Appellees beginning in early 2003 through December 2006. In February 2007, Mr. Striff, age 43, had a fatal heart attack. The autopsy showed that he suffered from coronary artery disease. Appellant claims that Appellees failed to appropriately diagnose and/or follow-up on Mr. Striff's cardiac condition, especially in light of his family history of cardiac disease. Mr. Striff's identical twin brother had several heart attacks and was diagnosed with heart disease when he was in his early thirties. Mr. Striff's mother was also diagnosed with heart disease at an early age and had by-pass surgery.

{¶3} Appellees deny any wrong-doing and contend that they followed the appropriate standard of care for the treatment they provided Mr. Striff. They maintain that Mr. Striff was completely responsible for his medical condition due to his life-style choices and, more importantly, his failure to follow through with the recommendations and follow-up treatments ordered by Appellees. Mr. Striff was overweight, smoked a pack of cigarettes a day, and drank several alcoholic beverages every day. Mr. Striff also failed to obtain a lipid profile to measure his cholesterol and did not see a cardiologist, as he was instructed to do on many occasions.

*Treatment with Dr. McCullough, D.O.*
*and Pandora Family Physicians, Inc.*

{¶4} In February 2003, Mr. Striff visited Dr. McCullough for the first time with complaints of fatigue, upper chest heaviness, and a racing heart, after being seen in the emergency room the previous day. Dr. McCullough ordered a cardiac work-up, including: (1) EKG; (2) stress test; (3) echocardiogram; (4) a fasting lipid profile to check cholesterol levels; (5) referral to a cardiologist, Dr. Kingsley; and (6) a follow-up appointment the next month. Dr. McCullough completed a consultation letter to the cardiologist and an appointment was scheduled for Mr. Striff with Dr. Kinglsey on April 8, 2003. The results of the EKG, stress test, and echocardiogram were within normal ranges and were negative for myocardial infarction or cardiac disease. Mr. Striff did not have his

lipid profiles done and he did not show up for his appointment with the cardiologist or for his follow-up appointment with Dr. McCullough.

{¶5} Mr. Striff next saw Dr. McCullough in December 2003 to have a lesion removed from his face. He visited Dr. McCullough four more times in July, August, and September 2004 with complaints of muscle spasms and upper and lower back pain. Mr. Striff had no cardiac complaints at any of these visits, and Mr. Striff never saw a cardiologist or obtained a lipid profile as directed by Dr. McCullough, who continued to remind him to do so. September 7, 2004 was the last time Dr. McCullough treated Mr. Striff.

*Treatment with Nurse Bodkin, C.N.P.,*
*Dr. Martin, and Luke Medical Center*

{¶6} Nurse Bodkin was a Certified Nurse Practitioner at Luke Medical Center who saw Mr. Striff on one occasion, on May 22, 2006, when he came to the center as a new patient. Mr. Striff complained of having panic attacks, leg cramps, and left shoulder/neck/arm pain as well as back pain. Mr. Striff wanted to try some medication for anxiety and panic attacks, supposedly due to new VFW public speaking responsibilities. In the paperwork he completed at Luke Medical Center, he represented his cardiovascular history to be negative for high blood pressure, heart disease, heart murmur, angina, chest pain, and rheumatic fever, although he did acknowledge that he had a family history of heart disease.

{¶7}  Nurse Bodkin wanted to do an EKG but testified that Mr. Striff did not want one because he believed his pain was all in his neck and shoulder due to a previous work injury.  X-rays were done which showed a disc problem which could have been the cause of the left shoulder and arm pain.  In any case, Nurse Bodkin ordered complete blood work testing, including a lipid profile to check his cholesterol, and encouraged him to obtain further screenings to evaluate his risk for possible cardiovascular disease due to his family history.  She ordered a copy of his medical records in order to review them with him at his follow-up appointment in June.  Mr. Striff never had the blood work done, never came back for the follow-up appointment, and never saw Nurse Bodkin again.

{¶8}  Mrs. Striff, however, called the clinic on behalf of her husband on June 20, 2006, to request a refill on one of the prescriptions issued by Nurse Bodkin.  Nurse Bodkin was not there at the time so Dr. Martin, her "collaborating physician," initialed his approval of the refill on the telephone message request.

*Treatment with Dr. Klir*

{¶9}  On August 22, 2006, Mr. Striff presented to Dr. Klir for a DOT physical for the renewal of his commercial driver's license ("CDL").  Mr. Striff drove a truck for BP delivering propane to customers.  He had no cardiac complaints or symptoms at this time and he represented that his health history was negative, except for back pain.  Dr. Klir examined Mr. Striff and found that he met

all the requirements necessary to qualify him for certification for his CDL. Dr. Klir's assessment notes from the visit stated: "follow-up for CAD [coronary artery disease], check cholesterol, tobacco abuse – advised cessation, and DOT physical."

{¶10} Mr. Striff again saw Dr. Klir on September 15, 2006, experiencing flu-like symptoms. He was diagnosed with sinusitis, placed on antibiotics, and again advised to get his lipid testing done and to stop smoking. Mr. Striff saw Dr. Klir one more time, on December 18, 2006, complaining of a mole on the buttock and probable hemorrhoids.

{¶11} On February 7, 2007, Mr. Striff collapsed and died of a massive heart attack while making a fuel delivery in the cold. On February 4, 2008, Appellant filed a complaint seeking compensatory damages for the wrongful death of her husband, proximately caused by the alleged medical malpractice of Appellees.

{¶12} Extensive discovery was conducted, experts were deposed, and numerous motions in limine were filed and ruled upon. Dr. Martin filed a motion for summary judgment, which was granted on October 28, 2009. A five-day jury trial was held with the remaining defendants November 17-23, 2009.

{¶13} During the proceedings, Appellant moved for a new trial based upon the allotment of peremptory challenges; she moved for a mistrial after opening

statements and again after a juror was dismissed due to illness; and she moved for a directed verdict on the issue of contributory negligence. The trial court denied all of the above motions.

{¶14} On November 23, 2009, the jury returned unanimous verdicts in favor of all Appellees and found the decedent to be 100% negligent. The trial court entered judgment in favor of Appellees on November 30, 2009.

{¶15} Appellant then filed a motion for a new trial, which was denied on December 31, 2009. Appellant now brings this appeal, raising the following eleven assignments of error for our review.

### First Assignment of Error

**The trial court erred to the prejudice of [Appellant] in granting summary judgment on the issue of liability in favor of Appellee [Dr. Martin].**

### Second Assignment of Error

**The trial court committed reversible error in providing six peremptory challenges to each side, thereby precluding Appellant's intelligent use of her peremptory challenges.**

### Third Assignment of Error

**The trial court committed reversible error in denying Appellant's motion for a mistrial following the opening statement of [Dr. Klir].**

**Fourth Assignment of Error**

**The trial court committed reversible error in excluding evidence of the lipid profile results of the decedent's identical twin brother.**

**Fifth Assignment of Error**

**The trial court committed reversible error in excluding evidence of Dr. Harris' opinions not expressly disclosed during his discovery deposition.**

**Sixth Assignment of Error**

**The trial court committed reversible error in admitting evidence of the Decedent's collateral workers' compensation claim.**

**Seventh Assignment of Error**

**The trial court committed reversible error in admitting the expert testimony of cardiologist Steven Yakubov, M.D., that Appellees met the requisite standard of care.**

**Eighth Assignment of Error**

**The trial court committed reversible error discharging Juror #1 and in denying Appellant's motion for a mistrial.**

**Ninth Assignment of Error**

**The trial court committed reversible error in denying Appellant's motions for directed verdict on the issue of the decedent's contributory negligence.**

**Tenth Assignment of Error**

**The trial court committed reversible error in instructing and submitting to the jury the issue of the decedent's comparative negligence.**

**Eleventh Assignment of Error**

**The trial court committed reversible error in denying Appellant's motion for a new trial.**

{¶16} Several of Appellant's assignments of error contain overlapping issues of fact and law. Therefore, we elect to address some of the assignments of error together and out of order.

*First Assignment of Error*

{¶17} Several months prior to trial, Dr. Martin moved for summary judgment asserting that Appellant could not produce any evidence that Dr. Martin was vicariously liable for the actions of Nurse Practitioner Bodkin. On October 28, 2009, the trial court granted summary judgment as to the claims against Dr. Martin, with the express finding pursuant to Civ.R. 54(B) that "there was no just reason for delay."

{¶18} As part of this appeal, filed on January 27, 2010, Appellant included Assignment of Error I, arguing that the trial court erred in granting Dr. Martin's motion for summary judgment. Dr. Martin filed a motion to dismiss this assignment of error because it was not filed within 30 days of the trial court's final appealable order and, therefore, was untimely pursuant to App.R. 4(A).

{¶19} Ohio Rule of Civil Procedure 54(B) addresses judgments upon multiple claims or involving multiple parties:

> **When more than one claim for relief is presented in an action whether as a claim, counterclaim, cross-claim, or third-party claim, and whether arising out of the same or separate transactions, or when multiple parties are involved,** *the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay.* **\*\*\***

(Emphasis added.) Id. The Civil Rule 54(B) language of a finding that there is "no just reason for delay" can be used to make a grant of summary judgment a final appealable order even when there are other outstanding claims against other parties left in the case. *Whitaker-Merrell Co. v. Geupel Co.* (1972), 29 Ohio St.2d 184,280 N.E.2d 922, at the syllabus; *Lillie v. Meachem*, 3d Dist. No. 1-09-09, 2009-Ohio-4934, ¶8. However, an order of a court will be a final, appealable order only if it meets the requirements of both Civ.R. 54(B), if applicable, and R.C. 2505.02. *Chef Italiano Corp. v. Kent State Univ.* (1989), 44 Ohio St.3d 86, 541 N.E.2d 64, at the syllabus.

{¶20} Appellant claims that the decision granting summary judgment in favor of Dr. Martin did not meet the requirements of R.C. 2505.02(B)(1), and was not a final appealable order. R.C. 2505.02(B) states that "[a]n order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following: (1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment; \*\*\*. Appellant argues that there were unresolved allegations and claims in the

complaint pertaining to Dr. Martin that prevented the decision from being a final appealable order.

**{¶21}** We disagree. The trial court specifically determined that, in addition to failing to present evidence to rebut the affidavit of Dr. Martin, there was not "anything in the evidentiary material submitted with this record that raises a genuine issue of material fact *as to any of the allegations in the complaint against defendant Dr. Martin*." (Oct. 28, 2009, Civ.R. 56 J.E., emphasis added.) *All* of the allegations in the complaint were dismissed against Dr. Martin in their entirety, leaving no claims or issues left to be litigated against this party.

**{¶22}** Therefore, having met the requirements of both R.C. 2505.02 and Civ.R. 54(B), the October 28, 2009 judgment entry granting summary judgment was a final appealable order concerning all of the claims against Dr. Martin. The doctrine of res judicata bars further litigation of issues that were raised previously or *could have been raised previously*. See *National Amusements, Inc. v. City of Springdale* (1990), 53 Ohio St.3d 60, 62, 558 N.E.2d 1178. See also, App.R. 4(B)(2)(5). Because Appellant failed to file a timely appeal addressing the issues concerning Dr. Martin's summary judgment, the issues raised in the first assignment of error are barred by res judicata. Dr. Martin's motion is granted and Appellant's first assignment of error is overruled.

*Second Assignment of Error*

**{¶23}** The trial court ordered that Appellant would receive four peremptory challenges[1] during jury selection and that Appellees collectively would receive six peremptory challenges (two for each defending medical professional). Appellant asserts that the trial court should have considered the three defending parties as a single "side" and limited them to only three peremptory challenges in total. Appellant maintains that the trial court abused its discretion by adopting a jury selection process that "prevented Appellant from exercising her peremptory challenges judiciously and intelligently." (Appellant's Br., p. 8.)

**{¶24}** In a civil case, each party is permitted to peremptorily challenge three jurors without reason pursuant to Civ.R. 47(C) as long as the challenge is not based on race or gender. *Hicks v. Westinghouse Materials Co.*, 78 Ohio St.3d 95, 1997-Ohio-227, 676 N.E.2d 872. Civil Rule 47(C) states, "[i]n addition to challenges for cause provided by law, each party peremptorily may challenge three prospective jurors. If the interests of multiple litigants are essentially the same, 'each party' shall mean 'each side.'" Multiple parties who file a common pleading, rely upon a singular statement of facts, and employ the same attorney to represent them may properly be considered a single party for the purposes of

---

[1] In her appellate brief, Appellant states that she was granted six peremptory challenges; Appellees claim she was granted four. The trial court's November 12, 2009 judgment entry states that Appellant would have four peremptory challenges.

determining the proper number of peremptory challenges. See *Nieves v. Kietlinski* (1970), 22 Ohio St.2d 139, 258 N.E.2d 454. However, in cases where each defendant files separate replies and defenses; each is represented by its own counsel; each attempts to prove that its conduct was not negligent; and, the individual defenses asserted do not necessarily stand or fall together, then each individual defendant is entitled to three peremptory challenges. *LeFort v. Century 21-Maitland Realty Co.* (1987), 32 Ohio St.3d 121, 125, 512 N.E.2d 640; *Bernal v. Lindholm* (1999), 133 Ohio App.3d 163, 727 N.E.2d 145.

{¶25} The facts pertaining to the individual defendants in this case meet all the criteria set forth in *LeFort* demonstrating that each defendant was a separate party. Each respective defendant was represented by separate counsel and filed separate pleadings and motions. Each defendant could prove he or she was not negligent independently of the other. Therefore, each of the separate defendants should have been entitled to three peremptory challenges. Instead, the trial court gave each defendant only two peremptory challenges and gave Appellant an additional peremptory challenge although not required to do so by the rule. We fail to see where Appellant has suffered any prejudice.

{¶26} Furthermore, Appellant's arguments claiming that the trial court's assignment of peremptory challenges was a "structural error"[2] requiring reversal without a showing of prejudice does not have any merit. The Ohio Supreme Court has held that while the *right* to peremptory challenges has become a substantive right, the rules governing the allowable *number* of peremptory challenges is a matter of procedure. *State v. Greer* (1988), 39 Ohio St.3d 236, 244-246, 530 N.E.2d 382.

> **There is, of course, no federal or state constitutional requirement that peremptory challenges be provided within a trial. However, such right, once provided by a state's legislature, is a valuable statutory incident to the right of trial by jury. \*\*\* Thus, once provided by the General Assembly, the peremptory challenge has become a crucial substantive right.** *The same cannot be stated with regard to the number of peremptory challenges allowed.*

(Internal citations omitted; emphasis added.) Id.[3] The rule reasonably limiting the number of times when the right to a peremptory challenge may be exercised is

---

[2] A structural error refers to those extremely rare errors that affect the very framework within which the trial proceeds and are predominately applicable to the rights of a defendant in a criminal trial, such as in *Arizona v. Fulminante* (1991), 499 U.S. 279, 306-312, 111 S.Ct. 1246, 113 L.Ed.2d 302, as cited and relied upon by Appellant. See *State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, ¶9 (stating that in *Fulminante*, the "United States Supreme Court denominated the two types of constitutional errors that may occur in the course of a *criminal proceeding* - 'trial errors,' which are reviewable for harmless error, and 'structural errors,' which are per se cause for reversal." Emphasis added.) The United States Supreme Court and Ohio courts have found structural errors warranting reversal in only a very limited number of cases. See, e.g., *Gideon v. Wainwright* (1963), 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (the defendant was completely denied counsel); *Tumey v. Ohio* (1927), 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (the trial judge was biased); Vasquez v. Hillery (1986), 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (racial discrimination took place in grand jury selection); *Waller v. Georgia* (1984), 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (the defendant was denied a public trial).

[3] Although the Ohio Supreme Court was discussing the peremptory challenges provided under *Criminal* Rule 24 in this case, we find the reasoning is also relevant concerning the Rules of Civil Procedure.

a matter of judicial economy.  Id.

{¶27} Furthermore, we are unable to review the record concerning the vague claims that the selection process somehow precluded Appellant from the "intelligent and judicious" use of her peremptory challenges because Appellant failed to provide a transcript of the jury voir dire pursuant to App.R. 9(B).  "When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 199, 400 N.E.2d 384.  Finding Appellant's arguments to be completely without merit, the second assignment of error is overruled.

*Eighth Assignment of Error*

{¶28} Appellant's eighth assignment of error also involves the jury panel. Appellant claims that the trial court committed reversible error when it discharged a juror who had become ill with flu-like symptoms and replaced him with an alternate juror.  Without citing any legal authority in support of her position, Appellant maintains that she "was prejudiced by the unreasonable, arbitrary, and unconscionable method by which the trial court discharged the juror." (Appellant's Brief, p. 17.)  Appellant did not provide any explanation as to how she was prejudiced by the trial court's dismissal of a sick juror.

**{¶29}** Civ.R. 47(D) states in pertinent part as follows: "Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties." It is within a trial judge's sound discretion to remove a juror and replace him or her with an alternate juror whenever facts are presented that would convince the trial judge that the juror's ability to perform his duty is impaired. *Hoffman v. D'Angelo*, 3d Dist. No. 13-03-07, 2003-Ohio-4046, ¶5; R.C. 2945.29. An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 218, 450 N.E.2d 1140. "A decision is unreasonable if there is no sound reasoning process that would support that decision." *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.* (1990), 50 Ohio St.3d 157, 161, 553 N.E.2d 597.

**{¶30}** Shortly after the noon recess on the fourth day of trial, Juror #1 informed the trial court he was ill and was about to throw up. The trial court asked him if he was able to continue and he responded that he was not. The trial court did not want to expose the other jurors to potential illness and was also faced with balancing a trial calendar that had medical experts scheduled for testimony that afternoon, so Juror #1 was excused and replaced with the first alternate.

{¶31} There were several sound reasons to support the trial court's decision to replace a sick juror. We do not find that the trial court abused its discretion when it replaced Juror #1 with an alternate juror and denied Appellant's motion for a mistrial. The eighth assignment of error is overruled.

*Third Assignment of Error*

{¶32} Appellant claims that the misconduct of Appellees' attorneys during opening arguments, along with repeated inflammatory comments throughout the trial, were designed to arouse the jury's passion and prejudice and constituted prejudicial error. Appellant complains that Appellees developed erroneous and prejudicial "good doctor" themes, attempted to engender sympathy, and argued to the jury that the Appellees' professional reputations were on trial in this medical malpractice action.

{¶33} Attorneys are given wide latitude in making oral arguments to the jury. *Pang v. Minch* (1990), 53 Ohio St.3d 186, 559 N.E.2d 1313, paragraph two of the syllabus. Determining whether the bounds of permissible argument have been exceeded is a discretionary function to be performed by the trial court. *Pesek v. Univ. Neurologists Assn., Inc.*, 87 Ohio St.3d 495, 501, 2000-Ohio-483, 721 N.E.2d 1011, quoting *Pang*. The trial court's determination will not be reversed absent an abuse of discretion. Id.

**{¶34}** However, remarks or arguments not supported by the evidence and that are designed to arouse passion or prejudice to the extent that there is a substantial likelihood that the jury may be misled are improper. *Roetenberger v. Christ Hosp.*, 163 Ohio App.3d 555, 2005-Ohio-5205, 839 N.E.2d 441, ¶9; *Thamann v. Bartish*, 167 Ohio App.3d 620, 2006-Ohio-3346, 856 N.E.2d 301, ¶7. Abusive comments directed at opposing parties, counsel, or witnesses should not be permitted. *Pesek*, 87 Ohio St.3d at 501. The dispositive question is whether the verdict was rendered on the evidence or was influenced by improper remarks of counsel. Id. at 502.

**{¶35}** A thorough review of the trial transcript does not disclose any arguments or remarks by Appellees' counsel that went beyond the bounds of appropriate advocacy or that were not supported by the evidence. There was no commentary or behavior by Appellees' attorneys that bore any resemblance to the inappropriate and egregious behavior warranting a mistrial, as in the cases cited by Appellant.

**{¶36}** Furthermore, the trial court properly instructed the jury that the attorneys' statements did not constitute evidence:

> **The evidence does not include any statement of counsel made during the trial unless such statement was an admission which the court instructed you to accept. The opening statements and closing arguments of counsel are designed to assist you. They are not evidence.**

(Trial Tr. p. 845.) When a trial court properly instructs the jury that the attorneys' statements throughout the trial are not evidence, such an instruction defuses the possibility that any alleged improper statements made by counsel during trial will have a prejudicial impact. *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶211; *Brokamp v. Mercy Hosp. Anderson* (1999), 132 Ohio App.3d 850, 868, 726 N.E.2d 598. Juries are presumed to follow the instructions that they are given and this presumption rebuts any suggestion that improper prejudice arose from statements made by counsel throughout a trial. *Pang*, 53 Ohio St.3d at 195.

{¶37} The remarks by Appellees' attorneys were not unduly prejudicial and the jury was instructed that the attorneys' statements throughout the trial were not evidence. The trial court did not abuse its discretion when it denied Appellant's motion for a mistrial. Appellant's third assignment of error is overruled.

*Fourth, Fifth, Sixth and Seventh Assignments of Error*

{¶38} In these four assignments of error, Appellant submits that the trial court erred in admitting and in excluding evidence. In order for an appellate court to reverse a trial court's decision regarding the admissibility of evidence, an abuse of discretion must be demonstrated. *Beard v. Meridia Huron Hosp.*, 106 Ohio St.3d 237, 239, 2005-Ohio-4787, 834 N.E.2d 323, ¶20. As stated above, the term

"abuse of discretion" implies that the court's attitude in deciding the evidentiary issue was unreasonable, arbitrary, or unconscionable. *Blakemore*, supra.

**{¶39}** And, even where an abuse of discretion occurs, a trial court's improper evidentiary ruling constitutes reversible error only when the error affects the substantial rights of the adverse party or the ruling is inconsistent with substantial justice. *Beard* at ¶35, citing *O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 164-165, 407 N.E.2d 490. In determining whether an evidentiary ruling is inconsistent with substantial justice, a reviewing court must weigh the prejudicial effect of those errors and also determine whether, if those errors had not occurred, the jury would have probably made the same decision. Id., quoting *Hallworth v. Republic Steel Corp.* (1950), 153 Ohio St. 349, 91 N.E.2d 690, paragraph three of the syllabus.

**{¶40}** In the fourth assignment of error, Appellant asserts that the trial court erred when it ordered the exclusion of the lipid profiles of Mr. Striff's identical twin brother. Appellant claims that such evidence was relevant because Appellant's medical experts testified in their depositions that the lipid profiles of the twin brother would be strong predictors of the decedent's own lipid profiles, which were never obtained.

**{¶41}** Evidence Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the

determination of the action more probable or less probable than it would be without the evidence." Evidence that is not relevant is not admissible. Evid.R. 402; *Gable v. Gates Mills*, 103 Ohio St.3d 449, 2004-Ohio-5719, 816 N.E.2d 1049, ¶32. Evidence may also be excluded if its probative value is substantially outweighed by the danger of confusing the issues or misleading the jury. Evid.R. 403; *Gable*, supra.

{¶42} Mr. Striff's twin brother was not a party to the litigation, his lipid levels were not the subject of the lawsuit, and his medical history was not at issue. In ruling upon Appellees' motion in limine to exclude the twin's lipid profile, the trial court noted that no expert stated that the standard of care of any of the defendants required them to obtain the lipid profile of Mr. Striff's twin. The trial court determined that "[t]here are too many questions regarding the twin's lipid levels, such as: when the twin's lipid levels were obtained in relation to [Mr. Striff's] death, the twin's diet, exercise habits, work habits, social habits and smoking and drinking habits, that would need to be addressed to see if it was reliable to compare to [Mr. Striff], whose levels are not known." (Nov. 17, 2009 J.E., p.2.) Even Appellant's medical expert, Dr. Harris, acknowledged that he could not state that their lipid profiles would have been identical because they were not exposed to identical environments.

{¶43} The trial court allowed Appellant's expert to testify about Mr. Striff's family history, the fact that his twin's cholesterol level was "quite high," and that the twin's cholesterol levels came down significantly when he was placed on a statin drug. The trial court only excluded the twin brother's specific lipid test result numbers, finding that they were not relevant and would be confusing.

{¶44} Based on the above, we do not find that the trial court's decision was an abuse of discretion. Appellant's fourth assignment of error is overruled.

{¶45} The fifth assignment of error concerns the exclusion of Appellant's cardiology expert's opinions that were not expressly disclosed during his discovery deposition. When Appellees deposed Dr. Harris in July of 2009, he was unable to provide answers[4] to many of the questions that Appellees asked, such as: what a reasonable cardiologist might have done if Mr. Striff had consulted one; whether an angiogram would have been positive; what type of treatment a reasonable cardiologist might have ordered; and how certain procedures might have increased the percentages of probability of Mr. Striff's survival if they had been performed. In November of 2009, Appellant filed a "Disclosure of Trial Witnesses," stating that Dr. Harris was planning to testify about all of the above

---

[4] Dr. Harris disclosed that he had been consulted for the sole purpose of determining whether Mr. Striff's sudden cardiac death was work-related. His only review of the records was in the context of his report to the Bureau of Workers Compensation. He testified that he was not told until the morning of the discovery deposition that he would be asked to render opinions on other subjects and opine as to whether a heart catheterization would have been helpful. During his deposition, he repeatedly stated he was not comfortable answering the questions posed until he had an opportunity to review the records in the context of this case and to give the matter further consideration.

matters, including how a reasonable cardiologist would have treated Mr. Striff and that if Mr. Striff had undergone such treatment, there was a greater than 90% probability he would have survived and enjoyed a normal life expectancy.

{¶46} Appellees sought to exclude this new testimony in order to prevent unfair surprise, citing this Court's recent decision in *Geesaman v. St. Rita's Med. Ctr.*, 183 Ohio App.3d 555, 2009-Ohio-3931, 917 N.E.2d 867, ¶¶55-62 (discussing how, pursuant to Civ.R. 26(B)(5), a litigant is entitled to know an opposing expert's opinion on a matter as well as the basis for that opinion so that counsel may make adequate trial preparations.) Appellees complained they had not had the opportunity to explore the basis for the purported new opinions that Dr. Harris was planning to offer at trial that were not disclosed at the time of his deposition. Appellant countered that there was no surprise because Dr. Harris later reviewed the information and Appellant had timely disclosed his opinions.

{¶47} In ruling on Appellees' motions in limine, the trial court stated that, "after reviewing [Dr.] Harris' deposition and the previous disclosures made by plaintiff, it is hard to decipher whether Harris was just ill prepared for his deposition or was really unable to render opinions with the information available." (Nov. 17, 2009 J.E., p. 3.) The trial court then thoroughly analyzed the deposition and the law and held that the motion in limine was granted in part and denied in part, specifying that Dr. Harris could testify concerning certain matters, he could

not testify as to a few specific areas not previously disclosed, and that he could offer his opinion as to other matters, providing they were based on a proper foundation.

{¶48} The trial court made a great effort to follow the law and be fair to all of the parties involved. Furthermore, at trial, Dr. Harris *did testify* to the matters that he had not previously disclosed at his deposition, over the repeated objections of the Appellees. The trial court noted the objections for the record, but overruled them and allowed the doctor to testify. We do not find that the trial court's decision was in any way unreasonable, arbitrary or unconscionable. Appellant's fifth assignment of error is overruled.

{¶49} Appellant's sixth assignment of error also involves Dr. Harris' testimony. Appellant complains that the trial court erred when it permitted Appellees to cross-examine Dr. Harris about the fact that he had originally been retained in connection with a workers' compensation claim arising from Mr. Striff's death. Appellant contends that this was in violation of the trial court's own order precluding references to Appellant's collateral sources of recovery as well as a violation of Ohio's collateral source rule, as stated in *Pryor v. Webber* (1970), 23 Ohio St.2d 104, 213 N.E.2d 235.

{¶50} The collateral source rule generally pertains to evidence concerning damages. The purpose of the collateral source rule is to prevent juries from

learning about a plaintiff's receipt of benefits from a source unrelated to the tortfeasor because the plaintiff's receipt of benefits from sources other than the wrongdoer is deemed irrelevant and immaterial as to the issue of damages owed by the tortfeasor. Id. This case is completely distinguishable from *Pryor* in that there was no testimony that Mr. Striff ever received any collateral benefits or workers' compensation benefits. The cross-examination went directly to the weight and credibility of Dr. Harris' opinions. Appellees questioned Dr. Harris concerning his initial confusion as to his role in the case and as to why he was now offering definitive opinions about issues that he was unable to testify to in his deposition. (See fn. 4.)

{¶51} Appellees were entitled to question Dr. Harris as to his bias and credibility. Finding no error warranting a new trial, Appellant's sixth assignment of error is overruled.

{¶52} In the seventh assignment of error, Appellant asserts that the trial court erred in admitting the testimony of Appellee's expert witness, Dr. Steven Yakabov, stating that Appellees had met the requisite standard of care. Appellant maintains that Dr. Yakabov, a cardiologist, was not qualified to render an expert opinion on the standard of care of primary care physicians or providers, such as Appellees.

{¶53} Dr. Yakabov testified that he was board-certified in internal medicine and cardiology. He further testified that he worked at Riverside Methodist Hospital as an interventional cardiologist but that he also taught internal medicine and family practice residents that rotate on the cardiology service. Dr. Yakubov also testified that more than 75% of his time was devoted to the active clinical practice of medicine. Following the above testimony, Dr. Yakubov was asked whether the defendant medical providers, in their cardiology work-up of Mr. Striff, met the applicable standard of care. The trial court overruled Appellant's objections when Dr. Yakubov responded in the affirmative.

{¶54} A trial court has discretion to determine whether a witness is competent to testify as an expert and the trial court's decision will not be reversed absent a clear showing that the court abused its discretion. *Celmer v. Rodgers*, 114 Ohio St.3d 221, 2007-Ohio-3697, 871 N.E.2d 557, ¶19. An expert need not specialize in the field about which he testifies so long as it is shown that the fields of expertise overlap. *Alexander v. Mt. Carmel Med. Ctr.* (1978), 56 Ohio St.2d 155, 158, 383 N.E.2d 564; *Barbee v. Finerty* (1995), 100 Ohio App.3d 466, 472, 654 N.E.2d 364.

{¶55} Dr. Yakubov was a physician who advised and taught primary care and family physicians on how to assess and properly manage cardiac patients. That certainly demonstrates an overlapping knowledge of the standard of care for

both types of practices. We do not find that the trial court abused its discretion in allowing Dr. Yakubov's testimony. Appellant's seventh assignment of error is overruled.

*Ninth and Tenth Assignments of Error*

**{¶56}** The ninth and tenth assignments of error both concern the issue of the decedent's contributory fault. Appellant claims that the trial court committed reversible error in denying her motion for directed verdict on this matter and that the court also committed reversible error in instructing the jury on the issue of comparative negligence.

**{¶57}** Ohio law recognizes the defense of contributory negligence in medical malpractice cases. *Viox v. Weinberg*, 169 Ohio App. 3d 79, 2006-Ohio-5075, 861 N.E.2d 909, ¶13; *Lambert v. Shearer* (1992), 84 Ohio App.3d 266, 284, 616 N.E.2d 965; OJI-CV 417.11. Disregarding a doctor's orders can be patient negligence. See, e.g., *Sorina v. Armstrong* (1988), 51 Ohio App.3d 113, 116, 554 N.E.2d 943. See, also, *BP Exploration & Oil Co. v. Maintenance Services, Inc.* (C.A.6, 2002), 313 F.3d 936, 944-45 (quoting *Geiselman v. Scott* (1874), 25 Ohio St. 86, stating "[a] surgeon assumes to exercise the ordinary care and skill of his profession, and is liable for injuries resulting from his failure to do so; yet if his patient neglects to obey the reasonable instructions of the surgeon, and thereby contributes to the injury complained of, he can not recover for such injury.")

Furthermore, the failure to provide an accurate patient history may preclude a finding of negligence on the part of a treating physician. See *Seley v. G.D. Searle & Co.* (1981), 67 Ohio St.2d 192, 208-209, 423 N.E.2d 831, 842-843. A plaintiff's contributory fault can serve to diminish recovery under modern comparative negligence principles when such negligence is contemporaneous with the malpractice of the physician. *Lambert*, 84 Ohio App.3d at 284. The contributory negligence of the patient must have been an active and efficient contributing cause of the injury that is the basis of the patient's claim. *Viox* at ¶13.

{¶58} In the ninth assignment of error, Appellant contends that the trial court erred as a matter of law in denying her motion for a directed verdict on Appellees' affirmative defense concerning the issue of the decedent's contributory fault. Civ.R. 50(A)(4) provides that a directed verdict is properly granted when "the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party ***." In considering a motion for a directed verdict, a court does not weigh the evidence or test the credibility of the witnesses. *Becker v. Lake County Memorial Hosp. West* (1990), 53 Ohio St.3d 202, 206, 560 N.E.2d 165. A court of appeals reviews the trial court's ruling on a

motion for directed verdict de novo. *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 95 Ohio St.3d 512, 2002-Ohio-2842, 769 N.E.2d 835, ¶4.

**{¶59}** Appellant claims that there was no evidence that established that the decedent's alleged non-compliance in failing to quit smoking, to see a cardiologist, and to obtain his lipid profiles contributed to his fatal heart attack. Appellant argues that the decedent's alleged non-compliance was not an "active and efficient" contributing cause of his death and was not contemporaneous with the alleged malpractice of the defendant physicians. Appellant submits:

> **[i]n this regard, it was uncontroverted that each of the defendant medical providers continued to treat the decedent after ordering him to quit smoking, see a cardiologist, and/or obtain his lipid profiles. Indeed, it was uncontroverted that none of the defendant medical providers terminated decedent as a patient. It was further uncontroverted that each of the defendant medical providers continued to treat the decedent despite his alleged non-compliance; thereby accepting decedent "as he was."**

(Appellant's Br., p. 19-20.)

**{¶60}** Appellant appears to argue that Mr. Striff's own negligence is negated because Appellees continued to treat Mr. Striff after he failed to follow their medical advice. Appellant has not provided any legal support for the proposition that a medical professional must terminate the doctor-patient relationship with a noncompliant patient or risk being liable for potential malpractice claims. The situation cited by Appellant in *Lambert* is distinguishable

from the facts in this case. We do not find any merit or any basis in the law for this assertion.

**{¶61}** During the trial, Appellees presented evidence demonstrating that Mr. Striff was non-compliant and repeatedly failed to follow medical advice. Mr. Striff's medical records, submitted into evidence by Appellant, were peppered with missed appointments for follow-up care; with evidence of his continued failure to quit smoking; and with multiple failures to follow simple physician orders, such as seeing a cardiologist and obtaining a lipid profile to check his cholesterol. Even Appellant's expert, Dr. Payne, testified that the failure of Mr. Striff to have his cholesterol checked probably led to an increased risk for an adverse cardiac event.

**{¶62}** A motion for a directed verdict must be denied if there is substantial, competent evidence supporting the position of the parties opposing the motion so that reasonable minds might reach different conclusions based upon the evidence. *Apel v. Katz* (1998), 83 Ohio St.3d 11, 1998-Ohio-420, 697 N.E.2d 600. This court finds that the record contained the requisite evidence to support the trial court's denial of Appellant's motion for a directed verdict. The ninth assignment of error is overruled.

**{¶63}** In the tenth assignment of error, Appellant challenges the trial court's comparative negligence jury instruction and submitted interrogatories

concerning Mr. Striff's contributory fault. The jury was given four verdict forms[5] and eleven interrogatories. Three of the interrogatories pertained to whether Mr. Striff was negligent; whether his negligence was the proximate cause of his injury/damages; and, if so, what percentage of negligence was attributable to Mr. Striff and what percentage of negligence was attributable to the other defendants that may have been found negligent. The jury found that none of the Defendants-Appellees were negligent in any way, and that 100% of the negligence that directly and proximately caused the death of Mr. Striff was attributable to the decedent.

{¶64} Appellant asserts that "no Ohio statute, court rule, or court decision authorizes a patient's contributory negligence to be 'compared' with the medical negligence of a physician in order to reduce a compensatory damages award in a medical malpractice action" and that the negligence of a patient and the negligence of a physician are incapable of comparison. (Appellant's Br. pp. 20-21.) Appellant's assertion is not correct. See, e.g., *Viox*, supra; *Lambert*, supra; R.C. 2315.32 et. seq. Ohio law has long held that, if properly proven, the issue of the

---

[5] One verdict form allowed the jury to find in favor of the Plaintiff-Appellant; the other three were to be used to find in favor of each of the three Defendants-Appellees. The jury returned the three verdicts in favor of each of the three Defendants-Appellees.

patient's contributory negligence must be presented to the jury. *Robison & Weaver v. Gary* (1876), 28 Ohio St.241, 1 W.L.B. 339. Furthermore, the issue of comparative fault is no longer pertinent in this case as the jury found that the defendants had *no* liability, and that Mr. Striff was 100% at fault.

{¶65} The Ohio Jury Instructions pertaining to Medical Negligence, OJI-CV 417.11, discuss patience negligence and "comparative negligence/contributory fault." Where there is comparative negligence/contributory fault in medical negligence, the instructions reference OJI-CV Chapter 403, containing the exact same interrogatories concerning patient negligence that were utilized by the trial court in this case.

{¶66} The contributory fault of the plaintiff may be asserted as an affirmative defense to a tort claim. R.C. 2315.32; *Viox*. Further, R.C. 2315.33 explains the "[e]ffect of contributory fault on right to recover," stating that the contributory fault of a person does not bar that person from recovering damages, but only *if* the contributory fault of the plaintiff was not greater than the combined tortious conduct of all other persons.[6] Id. "If contributory fault is asserted and established as an affirmative defense *** the jury in a jury action shall return a

---

[6] If the contributory fault of the plaintiff *is not greater* than the combined tortious conduct of all other persons from whom the plaintiff seeks recovery in this action and of all other persons from whom the plaintiff does not seek recovery in this actions, then the court shall diminish any compensatory damages recovered by the plaintiff by an amount that is proportionately equal to the percentage of tortious conduct of the plaintiff as determined pursuant to R.C. 2315.34. R.C.2315.33.

general verdict accompanied by answers to interrogatories, that shall specify the following: *** (D) The percentage of tortious conduct attributable to all persons as determined pursuant to section 2307.23 of the Revised Code." R.C. 2315.34.

{¶67} A strong presumption exists in favor of the propriety of jury instructions. *Burns v. Prudential Securities, Inc.,* 167 Ohio App.3d 809, 2006-Ohio-3550, 857 N.E.2d 621, ¶41; Arthur Young & Co. v. Kelly (1993), 88 Ohio App.3d 343, 350, 623 N.E.2d 1303. Generally, the trial court should give requested jury instructions "if they are correct statements of the law applicable to the facts in the case." *Murphy v. Carrollton Mfg. Co.* (1991), 61 Ohio St.3d 585, 591, 575 N.E.2d 828. Instructions that, in their totality, are sufficiently clear to permit the jury to understand the relevant law will not be the cause of a reversal upon appeal. *Burns*, 2006-Ohio-3550, at ¶41; *Schnipke v. Safe-Turf Installation Group, LLC.*, 3d Dist. No. 1-10-07, 2010-Ohio-4173, ¶30. Whether the jury instructions correctly state the law is a question of law, which we review de novo. *Murphy*, 61 Ohio St.3d at 591, 575 N.E.2d 828.

{¶68} We find that the trial court's jury instructions, along with the verdict forms and interrogatories submitted to the jury, were a correct statement of the law and were applicable to the facts in evidence in this case. Therefore, Appellant's

tenth assignment of error is overruled.

*Eleventh Assignment of Error*

**{¶69}** In the final assignment of error, Appellant claims that she was entitled to a new trial pursuant to several grounds set forth in Civ.R. 59(A) because she demonstrated that there were: irregularity in the proceedings; misconduct by the prevailing parties; a judgment not sustained by the weight of the evidence; multiple errors of law; and other good causes for a new trial. She contends that the trial court unreasonably, arbitrarily, and unconscionably denied the motion for a new trial.

**{¶70}** The decision as to whether or not to grant a motion for a new trial is within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. *Harris v. Mt. Sinai Med. Ctr.*, 116 Ohio St.3d 139, 2007-Ohio-5587, 876 N.E.2d 1201, ¶35. "Courts will find such an abuse only in the rare instance where a decision is so grossly violative of fact and logic that it demonstrates a perverse will, a defiance of judgment, undue passion, or extreme bias." *Brooks v. Wilson* (1994), 98 Ohio App.3d 301, 648 N.E.2d 552, citing *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 87, 482 N.E.2d 1248.

**{¶71}** Most of the arguments which were the basis for Appellant's motion for a new trial were the same issues that have been addressed in this appeal. Based upon our resolution of the issues raised in the previous ten assignments of

error, we do not find any error in the trial court's denial of a new trial based upon excusing the sick juror, the admission and exclusion of evidence, testimony by expert witnesses, opening and closing statements by counsel, jury selection, jury instructions, and the denial of a directed verdict based upon the decedent's contributory negligence.

{¶72} One issue raised in the motion for new trial that was not raised on appeal is that the judgment was not sustained by the weight of the evidence, pursuant to Civ.R. 59(A)(6). The review of a trial court's decision as to whether or not to set aside a jury verdict as being against the weight of the evidence is subject to the same abuse-of-discretion standard as for other grounds for a new trial; an appellate court does not directly view whether the decision was against the weight of the evidence. *Mannion v. Sandel*, 91 Ohio St.3d 318, 322, 2001-Ohio-47, 744 N.E.2d 759; *Walker v. Summa Health Sys.*, 9th Dist. No. 23727, 2008-Ohio-1465, ¶11. A trial court must not interfere with a verdict unless it is clear that the jury has reached a seriously erroneous result. *Bland v. Graves* (1993), 85 Ohio App.3d 644, 651, 620 N.E.2d 920. The trial court is only to determine whether the jury's verdict constituted a manifest injustice and whether the verdict was against the manifest weight of the evidence. *Rohde v. Farmer* (1970), 23 Ohio St.2d 82, 262 N.E.2d 685. Where a verdict is supported by competent and apparently credible evidence, a motion for a new trial will be

Case No. 1-10-15

denied. *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 652-53, 1994-Ohio-324, 635 N.E.2d 331; *Verbon v. Pennese* (1982), 7 Ohio App.3d 182, 183, 454 N.E.2d 976.

{¶73} We do not find that the trial court abused its discretion in its determination that the jury's decision did not constitute a manifest injustice and in finding that the jury's verdicts were all supported by competent, substantial and credible evidence. Accordingly, Appellant's eleventh assignment of error is overruled.

{¶74} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ROGERS and \*\*GALLAGHER, J.J., concur.**

**\*\* Sean C. Gallagher, sitting by Assignment from the 8th District Court of Appeals**

**/jlr**